## UNITED STATES *v.* GLEESON.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted January 4, 1888. — Decided January 16, 1888.

On appeal by the United States from a judgment of the Court of Claims against them for less than three thousand dollars, rendered *pro forma*, against the opinion of that court, and for the purpose of an appeal, this court, upon objection taken in behalf of the United States to the irregularity of the actions of the court below, reverses the judgment, and remands the case for further proceedings according to law.

THIS was an appeal by the United States from a judgment of the Court of Claims upon the petition of James M. T. Gleeson, a clerk of the Post-Office Department, claiming arrears of salary. Upon. the proofs in the cause, the Court of Claims made a finding of facts, in substance as follows:

On November 15, 1871, the claimant, by an order of the Post-Office Department addressed to him, was "designated a railway post-office head clerk on cars between Washington, D. C., and Lynchburg, Va. Pay $1400 per annum." He entered upon his duties under that order, and continued to serve until May 23, 1883.

On August 14, 1876, one of the blank printed forms, used by the department to notify railway post-office head clerks of

a reduction of their pay, and copied below, was filled up by inserting the words and figures in brackets.

"Post-Office Department, Washington, D. C., August [24], 1876. [J. M. T. Gleeson, R. P. O. head clerk, Washington, D. C.] Sir: The Postmaster General has changed your pay as R. P. O. head clerk between [Washington, D. C., to Lynchburg, Va.,] from $[1400] to $[1300] per annum, to take effect on and after August 1, 1876. Very respectfully, &c., [James H. Marr, Acting] First Assistant Postmaster General."

On June 12, 1879, the First Assistant Postmaster General made an order to "reduce the pay of" the claimant and three others, "head clerks on the cars between Washington, D. C., and Lynchburg, Va., from $1300 to $1240 per annum, from the 1st to the 30th day of June, 1879, inclusive."

The claimant received these notices and orders, and received full pay in accordance therewith. From August 1, 1876, to July 31, 1882, his salary was reduced from $1400 to $1300 per annum, and for the month of June, 1879, a further reduction was made from $1300 to $1240 per annum, the whole amount of the deductions being $597.84.

The further proceedings of the Court of Claims appeared by the transcript certified by its clerk to this court to have been as follows:

Its conclusion of law was in these words: "And upon the foregoing findings of fact, it appearing that the decision in this case will affect a class of cases, and that the statutory question involved is novel, the court decides, for the purpose of an appeal to the Supreme Court, that the claimant should recover the sum of $597.84."

One of the judges, in behalf of the court, delivered the following opinion:

"It has been the rule and usage of this court, when the determination of a new question will affect a class of cases, in none of which a claimant, by reason of the smallness of his demand, will have a right of appeal, to render a judgment *pro forma* against the government in one case, to the end that the question may be examined and the rights of all parties determined by the Supreme Court.

"In the present instance, the question is novel, and the claimants are a deserving class of officials, whose skill, diligence and honesty affect the entire community probably more than the personal services of any other officers. If this case were to receive a final decision in this court, my own conclusion would probably be adverse to the claimant. To me it seems clear that the Postmaster General had authority to reduce the claimant's compensation prospectively, whose continuation in the railway mail service must have been upon the terms prescribed; but it does not seem more clear than other class cases, which have been sent to the Supreme Court in the same way, and in some of which the Supreme Court has thought otherwise. *Twenty Per Cent Cases*, 4 C. Cl. 227; 9 C. Cl. 103.

"The other members of the court desire to have it understood that their opinion is adverse to the claimant upon the merits, and that if any other case of this class shall be brought to a hearing before the question involved be determined by the Supreme Court, the decision *pro forma* now rendered will not furnish a precedent for a recovery.

"The judgment of the court is that the claimant recover of the defendants the sum of $597.84."

Final judgment was entered in this form: "At a Court of Claims held in the City of Washington, on the 24th day of January, A.D. 1887, it was ordered that judgment *pro forma* for the purpose of an appeal to the Supreme Court be entered as follows:

"The Court, on due consideration of the premises, find for the claimant, and do order, adjudge and decree that the said James M. T. Gleeson do have and recover of and from the United States the sum of five hundred and ninety-seven and $\frac{84}{100}$ dollars ($597.84)."

*Mr. Attorney General*, *Mr. Assistant Attorney General Howard*, and *Mr. F. P. Dewees* for appellants.

*Mr. Robert C. Schenck* for appellee.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The United States can be sued for such causes and in such courts only as they have by act of Congress permitted. Neither the Court of Claims nor this court can hear and determine any claim against the United States, except in the cases, and under the conditions, defined by Congress.

By § 1059 of the Revised Statutes, the Court of Claims had jurisdiction to hear and determine the claim of Gleeson. The jurisdiction of this court over it depends upon the provision of § 707, by which "an appeal to the Supreme Court shall be allowed on behalf of the United States from all judgments of the Court of Claims adverse to the United States, and on behalf of the plaintiff in any case where the amount in controversy exceeds three thousand dollars."

Congress has thus clearly manifested its will that, in any cause where the amount in controversy does not exceed three thousand dollars, the United States alone shall have a right of appeal; and that if the opinion of the Court of Claims in such a cause is adverse to the claimant, a final and conclusive judgment shall be rendered against him in that court.

By the existing statutes, Congress has neither made, nor authorized an executive department or the Court of Claims to make, the appellate jurisdiction of this court, over claims against the United States for three thousand dollars or less, to depend upon the question whether the decision will affect a class of cases; and the omission is the more significant, because former statutes gave this court, on the certificate of the presiding justice of the Court of Claims, appellate jurisdiction, and the Court of Claims, on a submission by an executive department, original jurisdiction, of claims of such an amount, where the decision would affect a class of cases, or furnish a precedent for the future action of any executive department in the adjustment of a class of cases. Acts of March 3, 1863, c. 92, § 5, 12 Stat. 766; June 25, 1868, c. 71, §§ 1, 7, 15 Stat. 75, 76; Rev. Stat. § 1063; Act of March 3, 1887, c. 359, §§ 9, 12, 24 Stat. 507.

In the transcript certified to this court, the judgment of the Court of Claims, that the claimant recover of the United States the sum of $597.84, appears upon its face to have been

rendered "*pro forma* for the purpose of an appeal to the Supreme Court." The court's conclusion of law, which is a necessary part of the record, shows that the decision was made for that purpose, and because it would affect a class of cases, and the question involved was novel. And the opinion, which, though perhaps not strictly a part of the record, has been sent up with the record, as required by Rule 8 of this court, shows that the judgment was against the unanimous opinion of the judges, and that they will not consider it a precedent for a like decision in any other case.

The effect of this way of disposing of the case, if sanctioned by this court, would be to nullify the restriction put by Congress upon appeals from the Court of Claims, to subject the United States to be impleaded in this court without their consent, to make this court a court of original instead of appellate jurisdiction, and to compel it to hear and determine a claim which, if the court below had performed the duty, imposed upon it by law, of applying its own judgment to the merits of the case, could not have been brought here at all.

In support of such a course of proceeding in a court of first instance, the appellee relies on a passage in an opinion delivered by Chief Justice Taney, in a case which came before this court upon a certificate of division of opinion between two judges in the Circuit Court, made, as the report states, "*pro forma*, and for the purpose of obtaining the opinion of the Supreme Court on the points certified." The passage quoted is as follows: "We are aware that in some cases, where the point arising is one of importance and difficulty, and it is desirable for the purposes of justice to obtain the opinion of this court, the judges of the Circuit Court have sometimes, by consent, certified the point to this court, as upon a division of opinion; when in truth they both rather seriously doubted than differed about it. We do not object to a practice of this description, when applied to proper cases, and on proper occasions." *United States* v. *Stone*, 14 Pet. 524, 525. But that opinion contains nothing to countenance the theory that the judges of a subordinate tribunal can be permitted, without considering a case themselves, to transmit it to this court for determination, and

thus to shift a burden upon this court which none of the judges below will have any share in discharging. On the contrary, the Chief Justice went on to say: "But they must be cases sanctioned by the judgment of one of the judges of this court, in his circuit. A loose practice in this respect might render this court substantially a court for the original decision of all causes of importance; when the Constitution and the laws intended to make it altogether appellate in its character; except in the few cases of original jurisdiction enumerated in the Constitution." In that case this court held that it had no jurisdiction, by reason of the irregularity in the proceedings of the Circuit Court, and remanded the case to that court for further proceedings according to law. And in later cases brought up by certificate of division of opinion, this court has steadfastly declined to answer questions not certified in accordance with the spirit, as well as the letter, of the statutes upon that subject. *Webster* v. *Cooper*, 10 How. 54; *Railroad Co.* v. *White*, 101 U. S. 98; *Jewell* v. *Knight*, 123 U. S. 426.

It is true that there are cases in the books, in which appeals from judgments of the Court of Claims, appearing to have been rendered *pro forma*, but no objection being taken on that ground, have been considered and decided upon the merits. *Twenty Per Cent Cases*, 20 Wall. 179, 181, and 9 C. Cl. 103, 105, 302, 314; *United States* v. *Martin*, 94 U. S. 400, and 10 C. Cl. 276; *United States* v. *Driscoll*, 96 U. S. 421, and 13 C. Cl. 15, 40; *United States* v. *Fisher*, 109 U. S. 143, and 15 C. Cl. 323.

But in the case at bar, the irregularity of the action of the Court of Claims has been objected to by the Attorney General in behalf of the United States, and cannot be passed over.

*Judgment reversed, and case remanded to the Court of Claims for further proceedings according to law.*