10379

WALKER v. ATLANTIC COAST LINE RAILROAD CO. ET AL.

(102 S. E. 513.)

ARMY AND NAVY—COMPENSATION THROUGH WAR RISK BUREAU NOT INTENDED FOR SOLDIER INJURED AT RAILROAD CROSSING WHILE TRAVELING AS MEMBER OF PUBLIC.—Circular No. 4 of the Director General of Railroads, providing that injured officers and enlisted men of the army, injured or killed in railroad accidents, will be remitted to their claim for compensation through the War Risk Bureau, and will not receive any payment through the Railroad Administration, applies only to soldiers actually traveling on trains under orders of the government, or while engaged in actual military duty, and does not apply to a soldier killed in a collision between a train and the automobile in which he was traveling as a member of the public.

Before MEMMINGER, J., Charleston, Summer term, 1919. Affirmed.

Action by Elizabeth Parke Walker, as administratrix of Walter H. Walker, deceased, against the Atlantic Coast Line Railroad Company and another, to recover damages for the death of plaintiff's intestate in a collision between

defendant's train and the automobile in which he was riding. From an order striking out portions of the answer, defendants appeal.

Circular No. 4, mentioned in the opinion, was as follows:

United States Railroad Administration, Division of Law. Washington, October 25, 1918.   Circular No. 4.   Attention is directed to the act of Congress entitled "An act to amend an act entitled 'An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department,'" approved September 2, 1914, and for other purposes, approved October 6, 1917, Public Document No. 90, Sixty-fifth Congress (H. R. 5723).

This act establishes a system for compensating officers and enlisted men and women nurses of the Army and Navy Corps, when employed in active service under the War and Navy Departments of the government.

In case of railroad accidents, in order to avoid confusion and to effectuate a proper and uniform handling of the compensation claims of such injured and disabled persons who are entitled to receive compensation under the War Risk Act, upon the happening of any accident causing death, disablement, or of injury to any officer, enlisted man, or member of the Army or Navy Nurse Corps (female), occurring on any line of railroad under Federal control, the General Solicitor will immediately notify J. H. Howard, Manager Claims and Property Section, Division of Law, Southern Railroad Building, Washington, D. C., giving the name and emergency address of the dead or injured person, his or her number, rank, and routing, and in the case of injured persons, his or her present address.

Such injured officers and enlisted men and members of the Army and Navy Nurse Corps (female) will be remitted to their claim for compensation through the War Risk Bureau, and will not receive any payment through the Railroad Administration.

No claims for damages for injuries occasioning death or disablement of such persons should be recognized or entertained. The circumstances surrounding accidents should be investigated as heretofore and report filed.

The General Solicitor will notify general claim agents of this circular, who will in turn notify all claim agents. John Barton Payne, General Counsel. Approved: W. G. McAdoo, ·Director General of Railroads.

*Messrs. FitzSimons & FitzSimons* and *Douglas, McKay,* for appellant. *Messrs. FitzSimons & FitzSimons* submit: *This action cannot be maintained against the Atlantic Coast Line Railroad Company because the railroad was under Federal control and operation, and it was error to strike out this defense:* 99 S. E. 846. *It was error to strike out paragraph 7 and Circular No. 4 of the United States Railroad·Administration, as the same constituted a complete defense to this action. It is submitted that the representative of an officer of the army killed while on duty by a railroad operated by the United States in time of war can recover no greater compensation than the representative f any other officer killed in war and is limited to the compensation provided by the act of Congress through the War Risk Bureau. This precise question has recently been decided in the cases of Bryson, Admr., v. A. C. L. R. R. Co. et al., and Emma C. Swann, Admx., v. A. C. L. R. R. Co. et al., by the United States District of North Carolina. The opinion of the Court in the Castle case (99 S. E. R. 846) is conclusive of the question. We refer briefly to a few decisions upon the question of the powers of the President under the acts of Congress:* 250 Fed. 42; *Northern P. R. R. Co. v. North Dakota, ex rel. Langer* (Advance Opinions) U. S. Supreme Court, June 2, 1919, p. 533) ; 143 U. S. 649; 56 L. Ed. 294; 192 U. S. 470; 48 L. Ed. 525; 254 U. S. 476; 58 L. Ed. 1408, and the authorities therein cited; 244 U. S. 416; 61 L. Ed. 1233; 245 U. S. 366; 253 Fed. 549; 206 S. W. (Tex.) 114. *·Administrative or executive functions may*

*be delegated although the execution of the power delegated may involve exercise of discretion:* 103 Tenn., p. 500; 1 Ohio St. 88; 70 Ga. 694; 72 Pa. St. 498. *The right to sue at all comes only from consent of the government:* 20 How. 527; 15 L. Ed. 991; 101 U. S. 337; 134 U. S. 1; 238 U. S. 34; Advance Sheets, December 15, 1918, p. 19. *It is not a vested right, but a mere matter of grace and may be with-drawn at pleasure:* 20 How. 527; 15 L. Ed. 991; 101 U. S. 345; 25 L. Ed. 960; 8 Cyc., p. 910; 206 U. S. 370; 51 L. Ed. 1098; 101 U. S. 382; 25 L. Ed. 973; 52 Ala. 231; 23 A. Rep. 567., *The beneficiaries of the officer for whose death this action is brought never had any vested right which could not be taken away, and never had any contract subject to exemption from impairment:* 8 Cyc. 1018, and cases cited.

*Messrs. Logan & Grace,* for respondent, concede: *That exceptions one, two and three must be sustained (99 S. E. Reporter 846), but contend that plaintiff was not remitted under Circular No. 4, exclusively to the Bureau of War Risk Insurance for compensation, and she can claim compen-sation from railroad defendant. For this Court to sustain the position contended for by appellant would be to hold that the Director General could deprive Mrs. Walker of property without due process of law and to deny her the equal protec-tion of the law in violation of the Fourteenth Amendment to the Constitution of the United States. The Director General could not discriminate against men in uniform:* Cooley's Principles of Constitution Law 240; 6 R. C. L., sec. 390, p. 395; 75 S. C., p. 62. *The Director General cannot make an order which Congress itself could not make as a law, and as Congress cannot deny a citizen the right of access to the Courts for the purpose of bringing and main-taining actions (6 R. C. L., sec. 272, pp. 285-286, and cases cited), then certainly the Director General would not have this right. "Among the privileges and immunities are included the right of access to Courts for the purpose of bringing and maintaining actions, and this includes the right*

*to employ the usual remedies for the enforcement of personal rights and actions of every kind—a right which cannot be abrogated or even suspended."* 6 R. C. L., sec. 272, title Congressional Law, pp. 285-286, and cases cited.

February 23, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from an order of Judge Memminger striking out certain portions of appellant's answer; said order filed June 25, 1919.

The exceptions are six in number. Exceptions 1, 2, and 3 are sustained. Respondent's attorney concedes that they must be sustained, under *Castle v. Railway Co.,* 99 S. E. 846, manuscript decision of this Court. The remaining exceptions make the point under the circular known as No. 4, issued by Mr. McAdoo, the Director General of Railroads. Plaintiff was remitted exclusively to the Bureau of War Risk Insurance for compensation, and cannot claim compensation from railroad defendant.

If these exceptions are sustained, it ends the case; if overruled, the case can be amended and trial had. As the parties ask the decision of this question, we will do so, even though the Director General is not bound thereby; he not being before the Court.

These exceptions must be overruled. Circular No. 4 never intended to apply to a case such as the one at bar, but was intended to be effective where men in uniform were killed or injured while actually traveling on railroad trains under orders of government, or while engaged in actual military duty—such as being transported from one camp· to another. It does not apply to any soldier where he was traveling as a member of the general public.

It is inconceivable that it should be attributed to the patriotic, distinguished Director General that by his circular he intended such a glaring injustice to a soldier not traveling

actually in railroad trains under orders of the government or while engaged in actual military duty. Such a decision would stigmatize the Director General as having made an arbitrary and unjust discrimination against a soldier, a man in uniform, as compared to a citizen. To relegate him to insurance which he carried and paid for would be a glaring and outrageous injustice, and neither the spirit nor words of the circulars, relied on as being issued by the Director General, warrants any such unjust and preposterous inference.

There is absolutely no merit in appellant's exceptions, and the order appealed from is affirmed.