The suit was for personal injury sustained on September 30, 1918. The complaint, filed March 12, 1919, contained counts for simple negligence and for willful, wanton, and intentional conduct. The trial was had on March 23, 1920, when the court gave the affirmative charge in writing at defendant's request, as to the latter count. There was verdict and judgment for the sole defendant, Walker D. Hines, as Director General of Railroads of the United States, successor in office to William G. McAdoo.
The pleas were of the general issue as to both counts, and contributory negligence in answer to the first count. Without conflict the evidence showed that at the time of the injury for which suit was brought, plaintiff was a soldier in the United States Army, traveling as such on a passenger train of the Central of Georgia Railway Company while that transportation system, its properties and agents, were under federal control.
Under authority of the Act of Congress approved May 18, 1917 (U.S. Comp. St. 1918, U.S. Comp. St. Ann. Supp. 1919, § 2044a et seq.) the President, by General Order 79, War Department, August 24, 1918, directed that for the period of the emergency there be raised and maintained by voluntary induction and draft a Students' Army Training Corps. Paragraph 11 of the Special Regulations for the Students' Army Training Corps provides that —
"Upon admission to the Students' Army Training Corps a registrant becomes a soldier in the army of the United States. As such he is subject to military discipline at all times."
The Alabama Polytechnic Institute at the time of the injury, as shown by the evidence, maintained a unit of the Reserve Officers' Training Corps, provided for by the National Defense Act, approved June 3, 1916 (39 Stat. 191), as amended. The evidence shows without conflict that the plaintiff was a student at the Alabama Polytechnic Institute, so enrolled as provided by said Acts of Congress and order of the President, was a soldier and, as such soldier in the army of the United States and in compliance with the order of the appropriate department, made a trip from Auburn, Ala., to Tulsa, Okl.; and on his return therefrom pursuant to such order of superior military authority, received his injuries in question, while being transported in this state over the Central of Georgia Railway.
Under the uncontroverted facts, the primary question raised (and urged by counsel for appellant) by the giving of the general affirmative charge as to count 2, at written request of defendant, is: Whether a soldier in the United States army, who was injured while being transported by the United States as such soldier, over a line of railway then being operated by the government, had a right of action (in tort) against the United States, operating the transportation system *Page 357 
at the time and place of the injury, and causing such injury. The several acts of Congress, the President's proclamation, and orders of the Directors General of Railroads are cited or set out in Crim v. L. N. R. R. Co., 89 So. 376;[1] Vaughn v. State (App.) 17 Ala. App. 35, 81 So. 417, and 2 Roberts' Federal Liabilities of Carriers.
In addition to the acts of Congress cited in foregoing cases, it may be noted that in the act of Congress approved February 28, 1920, for the termination of federal control, and designated as the "Transportation Act, 1920," it was provided that —
"Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the act of August 29, 1916 (U.S. Comp. St. 1918 [Compact Ed.] § 1974a) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for the purpose, which agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits or proceedings may, within the periods of limitation now prescribed by state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier." Statutes of U.S. A. 1919-20, § 206 (a), 41 Stat. 461; Public Service Comm. v. N.Y. C. R. Co. (1920)112 Misc. Rep. 617, 183 N.Y. Supp. 799; Keene v. Hines (1920)111 Misc. Rep. 398, 183 N.Y. Supp. 520.
For easy reference we here reproduce section 10 of the act of Congress, March 21, 1918 (U.S. Comp. St. 1918, U.S. Comp. St. Ann. Supp. 1919, § 3115 3/4j) called the "Federal Controlled Transportation System Act," containing the provision that —
While under federal control carriers "shall be subject to alllaws and liabilities as common carriers, whether arising understate or federal laws or at common law, except in so far as maybe inconsistent with the provisions of this act or any otheract applicable to such federal control or with any order of thePresident. Actions at law or suits in equity may be brought byand against such carriers and judgments rendered as nowprovided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such federal control. During the period of federal control, whenever in his opinion the public interest requires, the President may initiate rates, fares, charges, classifications, regulations, and practices by filing the same with the Interstate Commerce Commission, which said rates, fares, charges, classifications, regulations and practices shall not be suspended by the commission pending final determination." (Italics supplied.) U.S. Comp. Stat. 1918 (Compact Ed.) § 456; Castle v. Southern Ry. Co., 112 S.C. 407,99 S.E. 846, 8 A.L.R. 959.
The extent of federal control has been the subject of frequent discussions by the courts. See annotations in 4 A.L.R. 1702; 8 A.L.R. 978; Spring v. Am. T. T. Co., (W.Va.)103 S.E. 206, 10 A.L.R. 951, and notes. That no divided, but a complete, possession and control of railroads was given the United States for all purposes by the act of Congress of 1916, the proclamations of the President exerting the powers given, and the act of 1918 dealing with the situation created by the exercise of such authority was recognized in Erie Ry. Co. v. Caldwell (C.C.A. 1920) 264 Fed. 947. In North. Pac. v. N.D. (1919) 250 U.S. 135, 39 Sup. Ct. 502, 63 L.Ed. 897, a decision by the Supreme Court of the United States, is definitely settled and declared the paramount authority of the Director General, and it is controlling on the question that there was no divided, but complete, possession and control of the railroads given the United States for all purposes by the several acts of Congress, proclamations of the President, etc. Other cases holding that there was a complete possession and control of railroads given the United States by authority of laws and proclamations in question are Bolton v. Hines (Ark.)221 S.W. 459; Texas N. O. R. Co. v. Clevenger (Tex.Civ.App.) 223 S.W. 1036; Houston, E. W. T. R. Co. v. Wilkerson (Tex.Civ.App.) 224 S.W. 574; Hines v. Dahn. (C.C.A. 1920) 267 Fed. 105. In Com. v. L. N. R. Co., 189 Ky. 309,224 S.W. 847; Hines v. McCook (Ga.App.) 103 S.E. 690; Wyman v. A. C. L. R. Co. (S.C.) 104 S.E. 542; Vann v. Southern Ry. (N.C.)104 S.E. 170; Hines v. Henaghan (C.C.A.) 265 Fed. 831; Hines v. Atl. Ref. Co. (C.C.A.) 265 Fed. 839; Ginn v. U.S. R. R. Administration (S.C.) 103 S.E. 548; The Virginia (D.C.) 264 Fed. 986; Rowell v. Hines (S.C.) 103 S.E. 545; Anderson v. Minn. St. P. S. Ste. M. R. R. Co. (Minn. 1920) 179 N.W. 45.
We take judicial knowledge that the President appointed the respective Directors General of Railroads, McAdoo and Hines, and, on termination of federal control, appointed Walker D. Hines, as agent under the *Page 358 
"Transportation Act, 1920." Keene v. Hines, supra; Kersten v. Hines (Mo.) 223 S.W. 586. Facts generally known are not required to be pleaded. Arndt v. City of Cullman, 132 Ala. 540,31 So. 478, 90 Am. St. Rep. 922; Mayor, etc., v. Starr,112 Ala. 98, 105, 20 So. 424; Perryman v. City of Greenville,51 Ala. 507; Albrittin v. Mayor, etc., 60 Ala. 486, 31 Am. Rep. 46; Case v. Mayor of Mobile, 30 Ala. 538; Smoot v. Mayor, etc., of Wetumpka, 24 Ala. 112, 121. We take judicial knowledge of the federal statutes having application, the President's several proclamations, the general orders of the Directors General of Railroads, and who such official or agent was at any given time; of the fact that the government had control of and was operating, pursuant to law, the transportation facilities and properties of the Central of Georgia Railway Company at the time of plaintiff's injuries, for which suit is brought; and that, pursuant to and only to the extent as authorized by law, the government was subject to suit or liability for the operation of transportation properties of this and other railway companies, to protect said railway companies whose properties were being so operated by the government against liability or loss for governmental acts, over which said railway companies or corporations had no control.
We may observe that the form of the instant suit was agreeable to the statutes, proclamations, and orders provided by law for suits against the Director General of Railroads, and as such was maintained against the government. Hines v. Dahn, supra. However, the liability of the government for such injury to plaintiff as a soldier being transported is the controverted question. For analogous authorities we note:
(1) The general rule that unless a plaintiff shows some act of Congress authorizing him, he cannot maintain a suit against the United States. This announcement found early expression in U.S. v. Clarke, 8 Pet. 436, 8 L.Ed. 1001, 3 Notes on U.S. Rep. (Rose), 465, 466, and was adhered to in later decisions of the Supreme Court of the United States. U.S. v. Lee, 106 U.S. 196,1 Sup. Ct. 240, 27 L.Ed. 171; The Nuestra Senora de Regla,108 U.S. 92, 2 Sup. Ct. 287, 27 L.Ed. 662; U.S. v. Gleeson,124 U.S. 255, 8 Sup. Ct. 502, 31 L.Ed. 421; Hill v. U.S.,149 U.S. 593, 13 Sup. Ct. 1011, 37 L.Ed. 862; Schillinger v. U.S.,155 U.S. 163, 15 Sup. Ct. 85, 39 L.Ed. 108; Austin v. U.S.,155 U.S. 417, 15 Sup. Ct. 167, 39 L.Ed. 206; Belknap v. Schild,161 U.S. 10, 16 Sup. Ct. 443, 40 L.Ed. 599; Ball v. Halsell,161 U.S. 72, 16 Sup. Ct. 554, 40 L.Ed. 622; Stanley v. Schwalby,162 U.S. 255, 16 Sup. Ct. 754, 40 L.Ed. 960; Price v. U.S.,174 U.S. 373, 19 Sup. Ct. 765, 43 L.Ed. 1011; Bigby v. U.S.,188 U.S. 400, 23 Sup. Ct. 468, 47 L.Ed. 519; Kansas v. U.S.,204 U.S. 331, 27 Sup. Ct. 388, 51 L.Ed. 510; Kansas v. Colorado,206 U.S. 46, 27 Sup. Ct. 655, 51 L.Ed. 956.
(2) That the United States cannot be sued except by its consent is of general acceptation; and the authorities are collected in R. C. L. vol. 26, § 63, p. 1458; Ferris v. Montgomery Land Imp. Co., 94 Ala. 557, 569-570, 10 So. 607, 33 Am. St. Rep. 146; State Land Co., Doe ex dem. v. Factors' Traders' Ins. Co., 166 Ala. 63, 51 So. 991; Cox v. Trustees, etc., 161 Ala. 639, 49 So. 814. That is to say, it is an established principle of "jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission." Hill v. U.S., 9 How. 386, 13 L.Ed. 185; Beers v. Arkansas, 20 How. 527, 15 L.Ed. 991; U.S. v. Diekelman, 92 U.S. 520,23 L.Ed. 742; Ball v. Halsell, 161 U.S. 72, 16 Sup. Ct. 554,40 L.Ed. 622; Belknap v. Schild, 161 U.S. 10, 16 Sup. Ct. 443,40 L.Ed. 599. The doctrine rests on reasons of public policy — the inconvenience and danger which would follow from a different rule. Belknap v. Schild, supra; 25 R. C. L. p. 412, § 49 et seq. This doctrine of the common law has been applied in the case of the United States courts — that no suit can be maintained against the government without its consent. Ribas y Hijo v. U.S., 194 U.S. 315, 24 Sup. Ct. 727, 48 L.Ed. 994; Oregon v. Hitchcock, 202 U.S. 60, 26 Sup. Ct. 568,50 L.Ed. 935; Naganab v. Hitchcock, 202 U.S. 473, 26 Sup. Ct. 667,50 L.Ed. 1113; Kansas v. U.S., supra; Kansas v. Colorado, supra; Louisiana v. Garfield, 211 U.S. 70, 29 Sup. Ct. 31,53 L.Ed. 92; Philadelphia Co. v. Stimson, 223 U.S. 605, 32 Sup. Ct. 340,56 L.Ed. 570; U.S. v. Daniels, 231 U.S. 218, 34 Sup. Ct. 84,58 L.Ed. 191; Peabody v. U.S., 231 U.S. 530, 34 Sup. Ct. 159,58 L.Ed. 351; Lane v. Watts, 234 U.S. 525, 34 Sup. Ct. 965,58 L.Ed. 1440; New Mexico v. Lane, 243 U.S. 52, 37 Sup. Ct. 348,61 L.Ed. 588.
There is no distinction between suits against the government directly and suits against its property. Stanley v. Schwalby,147 U.S. 508, 16 Sup. Ct. 754, 40 L.Ed. 960; Belknap v. Schild, supra; Overholser v. Nat. Home for Disabled Volunteer Soldiers,68 Ohio St. 236, 67 N.E. 487, 62 L.R.A. 936, 96 Am. St. Rep. 658. And no officer of the government can waive the exemption of the United States from judicial process, or submit the United States or its property to the jurisdiction of the court in a suit brought against its officers. Carr v. U.S.,98 U.S. 433, 25 L.Ed. 209; Stanley v. Schwalby, 162 U.S. 255,16 Sup. Ct. 754, 40 L.Ed. 960.
(3) Nor can any state pass a law which would have any validity for making the government suable in the courts of the state without its voluntary appearance as a party litigant. Burley v. U.S., 179 Fed. 1, 102 C.C.A. 429, 33 L.R.A. (N.S.) 807; Ferris v. *Page 359 
Montg. L. I. Co., supra; North. Pac. Ry. Co. v. N.D., supra; Belknap v. Schild, supra; Int. Postal Supp. Co. v. Bruce,194 U.S. 601, 24 Sup. Ct. 820, 48 L.Ed. 1134; Louisiana v. McAdoo,234 U.S. 627, 34 Sup. Ct. 938, 58 L.Ed. 1506; Wells v. Roper,246 U.S. 335, 38 Sup. Ct. 317, 62 L.Ed. 755; Minnesota v. Hitchcock, 185 U.S. 373, 385, 22 Sup. Ct. 650, 46 L.Ed. 954.
(4) This rule as to immunity of the United States from suits against it has been applied in various kinds of actions. Totten v. U.S., 92 U.S. 105, 23 L.Ed. 605; Reeside v. Walker, 11 How. 272, 13 L.Ed. 693. In this jurisdiction, where in a suit for partition it is indispensable that all cotenants not uniting in the bill for partition should be made parties defendant, and since the United States cannot be made a party without its consent, held a plea of one of the defendants, averring that the interest claimed by another defendant belonged to the United States, will, if sustained by the proof, render a final partition impossible, unless the United States voluntarily became a party to the cause (Ferris v. Montgomery Land Co., supra); and an injunction was denied against the United States in Belknap v. Schild, supra. The same principle has controlled in the case of suits against government officials, being in effect against the United States, where brought against the Secretary of the Interior (Oregon v. Hitchcock, 202 U.S. 60,26 Sup. Ct. 568, 50 L.Ed. 935; Naganab v. Hitchcock, 202 U.S. 473,26 Sup. Ct. 667, 50 L.Ed. 1113; Louisiana v. Garfield,211 U.S. 70, 29 Sup. Ct. 31, 53 L.Ed. 92; New Mexico v. Lane,243 U.S. 52, 37 Sup. Ct. 348, 61 L.Ed. 588, or the Secretary of the Navy. U.S. v. Daniels, 231 U.S. 218, 34 Sup. Ct. 84,58 L.Ed. 191. Such must be the effect of a suit against the Director General of Railroads, as a sole defendant. Ala. Girls' Ind. School v. Reynolds, 143 Ala. 579, 42 So. 114; Cox v. Trustees, etc., supra; White v. Ala. Insane Hospital, 138 Ala. 479,35 So. 454.
(5) That an action will not lie against the United States for a claim founded on a mere tort was the announcement in German Bank v. U.S., 148 U.S. 573, 13 Sup. Ct. 702, 37 L.Ed. 564; Schillinger v. U.S., 155 U.S. 163, 168, 169, 15 Sup. Ct. 85,39 L.Ed. 108; Russell v. U.S., 182 U.S. 516, 535, 21 Sup. Ct. 899,45 L.Ed. 1210; Bigby v. U.S., 188 U.S. 400, 409,23 Sup. Ct. 468, 47 L.Ed. 519; Mills v. U.S. (D.C.) 46 Fed. 738, 12 L.R.A. 673. The settled distinction in this respect between tort and contract is not to be evaded by framing the claim as on an implied contract. Bigby v. U.S., supra; Ribas y Hijo v. U.S., supra. It was held in Schillinger v. U.S., supra, that a suit against the United States for damages for the wrongful use of a patent was an action for tort, and not within the jurisdiction of the Court of Claims; and a claim for consequential damages to rice fields by the construction of a dam in making harbor improvements was one sounding in tort, and not within the jurisdiction of the Circuit Court (Mills v. U.S., supra); and in this jurisdiction a suit for resulting consequential damages, caused by backing of the water where the dam was constructed across a river in compliance with the act of Congress (Burnett v. Alabama Power Co., 199 Ala. 337,74 So. 459), was denied on like principle. See, also, Bedford v. U.S., 192 U.S. 217, 24 Sup. Ct. 238, 48 L.Ed. 414; U.S. v. Lynah, 188 U.S. 445, 23 Sup. Ct. 349, 47 L.Ed. 539.
As we have observed, the reason for the rule of public policy underlying the foregoing decision is that the permission to be sued is altogether voluntary on the part of the United States; that the sovereign may prescribe the terms and conditions on which it consents to be sued, the manner in which the suit shall be conducted, and may withdraw its consent whenever it supposes that justice to the public requires such withdrawal. U.S. v. Clarke, supra; Murray v. Hoboken, etc., Co., 18 How. 272, 15 L.Ed. 372; Beers v. Arkansas, supra; U.S. v. O'Keefe, 11 Wall. 178, 20 L.Ed. 131; Finn v. U.S., 123 U.S. 227,8 Sup. Ct. 82, 31 L.Ed. 128; Austin v. U.S., supra; Ball v. Halsell, supra; Elmore v. Fields, 153 Ala. 345, 45 So. 66, 127 Am. St. Rep. 31.
Prior to the war with Germany, Congress did not, by act of March 3, 1887 (U.S. St. at L. vol. 24, p. 505, ch. 359), permit the United States government, or its officers or agents, to be sued for torts. Schillinger v. U.S., supra; Hill v. U.S.,149 U.S. 593, 598, 13 Sup. Ct. 1011, 37 L.Ed. 862. In Tempel v. U.S., 248 U.S. 121, 130, 39 Sup. Ct. 56, 63 L.Ed. 162, the case of Hill v. U.S., supra, was followed, and U.S. v. Lynah, supra, and U.S. v. Cress, 243 U.S. 316, 37 Sup. Ct. 380, 61 L.Ed. 746, distinguished. 38 Cyc. p. 463. The act providing "for the bringing of suits against the government of the United States," approved March 3, 1887, defines the jurisdiction of the Court of Claims as follows:
"First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable: Provided, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned, jurisdiction to hear and determine claims growing out of the late Civil War, and commonly known as 'war claims,' or to hear and determine other claims, *Page 360 
which have heretofore been rejected, or reported on adversely by any court, department, or commission authorized to hear and determine the same. Second. All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the government of the United States against any claimant against the government in said court: Provided, that no suit against the government of the United States, shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made." 24 Stat. § 1, pp. 505-508.
And no act of Congress on the day of the instant trial (March 23, 1920) expressly authorized an action ex delicto against the United States government by a soldier in its armies for personal injury sustained while in the service of the government, though that injury was inflicted in or during his transportation as a soldier. No such right was conferred by the Transportation Acts, that approved February 28, 1920 (for termination of federal control, §§ 200-207a, hereinabove set out [Stat. U.S. A. 66 Cong. 2d Sess. 1919-20] p. 456), or by the Acts of Congress of June 29, 1906 (34 St. p. 584), or of August 29, 1916 (U.S. Comp. St. 1918 [Compact Ed.] § 1974a), of March 21, 1918 (U.S. Comp. St. 1918, U.S. Comp. St. Ann. Supp. 1919, §§ 3115 3/4a-3115 3/4c, 3115 3/4e, 3115 3/4f, 3115 3/4j).
In Atchison, T. S. F. Ry. Co. v. United States,225 U.S. 640, 32 Sup. Ct. 702, 56 L.Ed. 1236, in which the railroad company sued the United States to recover the reasonable value of railway post office car service, furnished to and by the Post Office Department, held that in carrying mails the railroad company was not hauling freight, nor was it acting as a common carrier with corresponding rights and liabilities, but was serving as an agency of the government, and subject to the laws and regulations of the Post Office Department; that the railroad company was not the real transporter of the mail, but only did this as an agent of the government; and that the relation between the government and the railroad company was not that of a common carrier.
We advert to a case by this court (Spenny v. M. O. R. R. Co., 192 Ala. 483, 484, 68 So. 870), where the observation is made of the legislative intent of an Alabama statute, as pertinent to the intent of Congress in passing the several acts we have discussed, and especially is this true in the light of provisions for indemnity for personal injury to a soldier, through the provisions of the War Risk Insurance Act (U.S. Comp. St. §§ 514a-514j), Chief Justice Anderson said:
"It is evident that the Legislature intended to deal with passengers in the ordinary acceptation of the term and in the usual and ordinary course of travel, and did not have in mind conditions such as presented in the case at bar."
See, also, Boston Ins. Co. v. C., R.I. P. R. R. Co.,118 Iowa, 423, 92 N.W. 88, 55 L.R.A. 796, Bankers' Mut. Cas. Co. v. M., St. P. S. Ste. M. R. Co., 117 Fed. 434, 54 C.C.A. 608, 65 L.R.A. 397, and Foster v. Metts, 55 Miss. 77, 30 Am.Rep. 504.
By the War Risk Insurance Act (38 Stat. 711), compensation is provided by the government to a soldier for death or injuries sustained by him while a soldier, if he avails himself of the terms of the act. The amount of compensation and the remedy therein prescribed is exclusive of other measures of and for liability and remedies provided for the protection of the civilian population of the general public. U.S. Comp. St. 1916 Ann. §§ 514qqq, 514tttt, 1919 Suppl. vol. 1, 43, 49; or 40 Stat. (U.S.) pp. 405, 611; or Act Cong. Sept. 2, 1914 (38 U.S. Stat. 711) c. 293, §§ 300-313, as added by Act October 6, 1917, c. 105, § 2, and as amended by Act June 25, 1918, c. 104, §§ 10, 18. A slight analogy is also found in the denial of double recovery under the Employés' Compensation Act. Comp. St. §§ 8932a, 8932aa. Hines, Dir. Gen., v. Dahn (C.C.A.) 267 Fed. 105; Webb v. White Eng. Corp., 204 Ala. 429, 85 So. 729.
It would follow, on account of his status as a soldier when sustaining his injury and his relationship to the government inflicting that injury, that a suit by him for said injury sustained in his transportation by the government as a soldier would be against the government, not permitted by an act of Congress, and is denied by public policy. In re Grimley,137 U.S. 147, 11 Sup. Ct. 54, 34 L.Ed. 636; 18 R. C. L. 1045, § 37. The reason for this rule is that plaintiff's enlistment as a soldier in the army of the United States was a contract with the government which changed his status as an individual and his relation to the state and public (In re Grimley, supra; In re Morrissey, 137 U.S. 157, 11 Sup. Ct. 57, 34 L.Ed. 644; Acker v. Bell, 62 Fla. 108, 57 So. 356, 39 L.R.A. [N. S.] 454, Ann. Cas. 1913C, 1269; U.S. v. Cottingham, 1 Rob. [Va.] 615, 40 Am. Dec. 710), creating a new status with correlative rights and duties.
The giving of the affirmative charge, at defendant's request in writing, was free from error. The judgment is affirmed.
Affirmed.
ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.
[1] 206 Ala. ___. *Page 361