### SANDOVAL v. DAVIS. PETERSEN v. SAME. McPEAK v. SAME.

(District Court, N. D. Ohio, E. D. March 13, 1922.)

Nos. 11113, 11177, 11037.

1. Railroads ⮞5½, New, vol. 6A Key-No. Series—Company suable for injuries occurring prior to federal control.

A soldier who was injured through the negligence of the servants of a railroad prior to the Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) while being transported in the line of his duty and on active service might maintain an action against the railroad.

⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. United States ⟨key⟩125—Suit against Director General in effect against government.**

The operation of railroads by Director General was in effect operation by the United States, and an action against him for injuries due to negligent operation was an action against the United States which could be maintained only if consent to be sued was given by some specific provision of law.

**3. Railroads ⟨key⟩5½, New, vol. 6A Key-No. Series—Director General's circular intended to bar to suit for soldier's injuries.**

Circular No. 4 of the Director General of Railroads, declaring that no claims of soldiers injured or killed while being transported in line of duty shall be allowed, and remitting them to claims for compensation under the war risk insurance acts, was clearly intended to deprive soldiers so injured of any right of action against the Director General; query as to whether said order is valid for that purpose.

**4. Army and navy ⟨key⟩51½, New, vol. 12A Key-No. Series—Compensation to soldiers in line of duty excludes recovery against Director General.**

The provisions of War Risk Insurance Act Sept. 2, 1914, § 300, as amended by Act Oct. 6, 1917, and section 313 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 514qqq, 514tttt) giving compensation to soldiers for injuries contracted in line of duty and requiring them to assign to the United States a right of action for such injuries against a person other than the United States or the enemy, the amount recovered to reimburse the United States for the compensation paid and any excess to be paid to the injured soldier, exclude the right to recover damages from the United States for negligence of the Director General of Railroads.

**5. Army and navy ⟨key⟩51½, New, vol. 12A Key-No. Series—Exclusive compensation under War Risk Insurance Act controls right of action under Federal Control Act.**

The specific provisions of the War Risk Insurance Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.) for compensation of soldiers injured in line of duty control the general provisions of Federal Control Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾g), and Transportation Act of 1920, § 206, reserving rights of action for injuries resulting from negligent operation of railroads so as to preclude an action against the agent under the Transportation Act for injuries to a soldier while being transported in line of duty.

At Law. Separate actions by Jose E. Sandoval, by Albert L. Petersen, and by B. T. McPeak, as administrator of the estate of Joseph E. Cleary, deceased, against James C. Davis, Agent appointed under Transportation Act of 1920, § 206. On demurrers to the answers. Demurrers overruled.

Payer, Winch, Minshall & Karch, of Cleveland, Ohio, for plaintiffs. Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. These three cases are before me on demurrers of the respective plaintiffs to the second defense of the several answers in each case. The questions of law arising thereon are precisely the same. Sandoval, Petersen, and Cleary were soldiers or enlisted men in the military service of the United States, and the two first named were injured and the last named was killed in the line of duty while on active service. Their injuries and death, it is alleged, were due to the negligent operation by employees of the Director General of Railroads in operating certain railroads under federal control. In addition to these facts the said second defense sets up Circular No.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4, dated October 25, 1918, of the Director General, which, defendant asserts, declares that no liability shall exist in favor of soldiers injured or killed under such circumstances, and remits them to the claim for compensation through the war risk insurance, and further avers that the two injured plaintiffs and the beneficiaries of Joseph Cleary have been awarded and have accepted and received the compensation provided by the War Risk Insurance Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.) to soldiers killed in the line of duty while on active service.

The demurrers are general. In support thereof plaintiffs urge that section 10, Federal Control Act March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), subjects the Director General to liability for injuries sustained by any person under such circumstances as a right of action would exist against the carrier if not under federal control, and that the consent of the United States is thereby given to the institution and prosecution of actions to recover damages. It is further urged that this right is preserved by section 206, Transportation Act 1920 (41 Stat. 456). The authority of the Director General either to modify or to deny the right of action conferred by section 10, or to withdraw the consent to be sued, therein given, of the United States, is also challenged. It is further said that said Circular No. 4 does not by its terms have the effect claimed for it, but that if, when issued, such was its intended purpose, it has since been superseded by the provisions of section 206, Transportation Act of 1920, which specially provide that actions at law based on causes of action arising out of the operation of railroads under federal control, of such a character as prior to federal control could have been brought and maintained, may now, since the termination of federal control, be brought and prosecuted to judgment. It is also contended that the compensation provisions of the War Risk Insurance Act do not bar nor deprive a soldier or enlisted man injured or killed under such circumstances from maintaining an action against the United States. On behalf of the defendant the contrary of these several positions is maintained.

This brings up for decision a controversy started originally by two departments of the United States government. The Bureau of War Risk Insurance, after having made an award of compensation to soldiers injured or killed in line of duty, demanded of the United States Railroad Administration reimbursement for such compensation whenever the injuries or death was caused by the negligence of employees of the Director General. The United States Railroad Administration has strenuously resisted these demands. These several actions, it was stated in argument, were brought at the request of the Bureau of War Risk Insurance under favor of certain provisions of the War Risk Insurance Act presently to be stated, in order that reimbursement might be obtained from funds subject to the control of the United States Railroad Administration. It was also stated in argument that the Bureau of War Risk Insurance has since abandoned its policy of thus seeking reimbursement, and that these and similar actions may now be prosecuted, for the benefit of the individual plaintiffs.

[1] Prior to the Federal Control Act it has been held a soldier in-

jured or killed through the negligence of the servants of a railroad while being transported in the line of his duty and on active service might maintain an action. See Truex v. Erie R. R. Co., 4 Lans. (N. Y.) 198; Galveston, H. & S. A. R. Co. v. Parsley, 6 Tex. Civ. App. 150, 25 S. W. 64; Gainer v. Hines, 194 App. Div. 21, 184 N. Y. Supp. 768. These cases arose, however, before the passage of the War Risk Insurance Act, and were prosecuted against the private owner of the railroad, and not against the Director General, an agent of the United States. They are therefore without special pertinency to the present questions.

[2] It is now also settled law that during federal control the operation of railways by the Director General was in substance and effect operation by the United States; that an action against the Director General to recover for injuries due to negligent operation is an action against the United States; and that a liability arises and an action can be maintained only if created and consent by the United States to be sued is given by some specific provision of law. See Northern Pacific R. R. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. ——, decided by the United States Supreme Court June 1, 1921; Alabama & V. Ry. Co. v. Journey, 257 U. S. ——, 42 Sup. Ct. 6, 66 L. Ed. ——, decided by the United States Supreme Court November 7, 1921; Erie R. R. Co. v. Caldwell (6 C. C. A.) 264 Fed. 947; Haubert v. B. & O. Ry. Co. (D. C.) 259 Fed. 361; Hines v. Dahn (8 C. C. A.) 267 Fed. 105, where the cases are collected; also Moon v. Hines, 205 Ala. 355, 87 South. 603, 13 A. L. R. 1020, where also the cases are collected and also commented upon.

[3] The validity of orders of the Director General modifying statutory and common-law rules was sustained by the United States Supreme Court in Missouri Pacific R. R. Co. v. Ault and Alabama & V. Ry. Co. v. Journey, above cited. Circular No. 4 admits, in my opinion, of no other interpretation than that it was intended to deprive soldiers on active service, injured or killed in the line of duty, of any right of action against the Director General, and to remit them to their claim for compensation under the War Risk Insurance Act. It says:

"Such injured officers and enlisted men * * * will be remitted to their claims for compensation through the War Risk Insurance Bureau and will not receive any payment through the Railroad Administration. No claim for damages for injuries occasioning death or disablement of such persons should be recognized or entertained."

This language does not admit of the interpretation adopted in Walker v. Atlantic Coast Line R. R. Co., 113 S. C. 448, 102 S. E. 513. It may also be noted that this case is authority only for the proposition that the order does not apply when a soldier is not injured in the line of duty, a very different question from the one presented when the soldier is injured in the line of duty, for in the first case he would be entitled to the compensation provided by the War Risk Insurance Act, and in the latter would not. Likewise Bryson v. Hines (4 C. C. A.) 268 Fed. 290, 11 A. L. R. 1438, also relied on by plaintiff, is without pertinency. In that case the opinion is expressed that Circular No. 4 applies only to

injuries sustained after it was issued, and not to injuries previously inflicted. In the instant cases the injuries were sustained after Circular No. 4 was issued. It should also be noted that these two cases were decided before the decisions of the United States Supreme Court, above referred to, sustaining the validity of orders made by the Director General, and that the opinions apparently do not recognize the now well-settled law that such actions for injuries are liabilities not of the private owner of the railroad, but of the United States.

However, in the view I take of these cases I deem it unnecessary to decide whether Circular No. 4 is valid; that is, whether, under section 10, Federal Control Act, the President, by order, might modify the provisions of the law subjecting carriers while under federal control to certain liabilities and giving the consent of the United States to be sued, or whether, if valid and effective to withdraw such consent, the liability and consent thus to be sued are restored by the provisions of section 206, Transportation Act of 1920. Plaintiff's argument in this respect is not without force, and the questions may be debatable. A difference may exist between orders such as were sustained in the two decisions above referred to and an order modifying or repealing an express provision of section 10 creating a liability and expressly giving consent to be sued. In our opinion the controlling question here is entirely different.

In my opinion the demurrers must be overruled, and upon the facts stated in the second defenses of the answers the several plaintiffs must be held not to be entitled to recover, because of the compensation provisions of the War Risk Insurance Act.

Section 300 of the War Risk Insurance Act, being an act of September 2, 1914, as amended by the act of October 6, 1917 (U. S. Comp. Stat. 1918, Comp. St. Ann. Supp. 1919, § 514qqq), provides:

"For death or disability resulting from personal injury suffered or disease contracted in the line of duty, by any commissioned officer or enlisted man * * * in the active service under the War Department or Navy Department, the United States shall pay compensation as hereinafter provided."

The amount of such compensation need not be stated.

Section 313 of the same act (U. S. Comp. Stat. 1918, Comp. St. Ann. Supp. 1919, § 514tttt) among other things, provides:

"If an injury or death for which compensation is payable under this article is caused under circumstances creating a legal liability upon some person other than the United States or the enemy to pay damages therefor, the Director, as a condition to payment of compensation by the United States, may require the beneficiary to assign to the United States any right of action he may have to enforce such liability."

This section contains other provisions permitting the Director of the Bureau of War Risk Insurance to require the beneficiary to prosecute the action in his own name, subject to regulations, and to require an assignment or prosecution after injury or death. A refusal to comply with these conditions bars the beneficiary from all right to compensation. The recovery inures to the benefit of the United States so far as is necessary to repay the compensation awarded to the injured soldier or his beneficiaries, and, if an amount is recovered in excess of such

compensation, then the injured person or his beneficiary is entitled to such excess.

In this case it appears that the two injured plaintiffs and the beneficiaries in the other case have been awarded and have received and accepted compensation. In this situation the present actions are prosecuted by the plaintiffs to recover additional compensation from the United States, which has already made compensation for such injuries and death, and are not actions against persons other than the United States causing such injury and death.

This produces the exact situation considered in Hines v. Dahn (8 C. C. A.) 267 Fed. 105.[1] The person injured in that case was an employee, and the case arose under the act to provide compensation to employees of the United States suffering injuries while in the performance of their duties (Comp. St. §§ 8932a-8932uu). The provisions of that act, however, are precisely the same as the provisions of the War Risk Insurance Act, except only that no provision is made for the disposition of any damages recovered in excess of the compensation awarded or payable to the injured employee. Section 26 (U. S. Comp. Stat. § 8932mm) is in substance and legal effect the same as paragraph 1, § 514tttt, above cited, excepting only such provision making disposition of the surplus. Section 26 provides:

"The surplus, if any, shall be paid to the beneficiary and credited upon any future payments of compensation payable to him on account of the same injury."

Apparently it was not contemplated that damages might be recovered in excess of the compensation to which the injured employee might be entitled. The provision of paragraph 1, § 514tttt, is:

"If the amount placed to the credit of such appropriation in such case is in excess of the amount of the award of compensation if any, such excess shall be paid to the beneficiary after any compensation award for the same injury or death is made."

The provisions relating to the right of action, if the wrong was inflicted by some person other than the United States, the right to require the beneficiary to assign his claim against such third person, or to prosecute such claim for the benefit of the United States and barring him from his right to compensation if he refuses so to do, are in substance and effect the same in both acts.

The court (Hines v. Dahn, supra) was of opinion that the claim of the railway mail clerk for an injury sustained due to negligent operation during federal control was inflicted by the United States, and not by other persons, and that the injured employee could not have double compensation, that is, an award provided by law and recovery of damages against the Director General, both amounts being, in the last analysis, paid from the same funds, that is, the public treasury of the United States. The court says:

"The only question left is as to the right of the plaintiff to not only receive compensation under the Compensation Act, but also to sue the United States for the negligence causing his injuries. In other words, must the United

---

[1] Affirmed by United States Supreme Court April 10, 1922. 257 U. S. ——, 42 Sup. Ct. 320, 66 L. Ed. ——.

States pay both compensation and damages for negligence to the same person for the same injury? Workmen's Compensation Acts are all alike as to the object sought to be attained, but they are so numerous and so varied as to details of administration that each act must be construed by itself. We are of the opinion that as to the United States the act in question is compulsory, if the employee gives the notice and files the claim in proper form according to the terms of the statute and the regulations of the commission. It is optional with the employee as to whether he will make a claim under the act or not. If he does not, in our opinion he would have a right to maintain the present action and prosecute the same to judgment, as we think that the United States as to this particular case by.the Federal Control Act consented to be sued. But if the employee elects to receive the benefits of the Compensation Act and his claim is allowed, then he is barred from prosecuting his action for negligence against the United States. In other words, he must elect which of the two remedies he desires to pursue, and, having elected to pursue one, he may not pursue the other. The United States under the statute being bound to pay the plaintiff after the latter has elected to claim the benefits of the Compensation Act, the remedy afforded by the act is exclusive."

In Moon v. Hines, 205 Ala. 355, 87 South. 603, 13 A. L. R. 1020, the Supreme Court of Alabama denied a soldier on active service injured in the line of his duty by the negligent operation of a railway train under federal control a right to recover. The opinion contains an able discussion of the principles of law involved and an extended citation and review of the authorities. It is in substance said that neither the Federal Control Act nor the Transportation Act expressly authorize an action ex delicto against the United States government by a soldier in its armies for personal injuries sustained while in the service of the government, though that injury was inflicted in or during his transportation as a soldier, and that the compensation provided by the government under the War Risk Insurance Act for death or injuries is exclusive of other measures of, and for liability and remedies provided for the protection of the civilian population of the general public.

In Seidel v. Director General of Railroads (La.) 89 South. 308, the Supreme Court of Louisiana held that a sailor in active service injured in the line of duty by the negligent conduct of an employee of the Director General of Railroads is not entitled to recover. It is said, in substance, that the rights and remedies conferred by the War Risk Insurance Act are exclusive of all other rights and remedies of such injured sailor against the United States or any agency of the United States. This is supported by the well-settled rule that, where a right is conferred by a statute and a specific remedy for enforcing that right is provided, the relief can be had only in the mode thus specially provided. It is further said:

"If plaintiff had this remedy by suit in damages he would have against the Government two remedies: One in damages; and one under said act. The government has not so provided; but has provided only the one remedy under said act."

[4, 5] The conclusion in these three cases is the same. The three different courts reached this conclusion by somewhat different argument. It seems to me that the reasoning of all three opinions is sound. Congress did not intend to confer upon an injured or killed soldier or sailor a right to a double recovery of compensation from the United States. It did preserve the right to recover damages in the event his

death or injury was caused "under circumstances creating a legal liability upon some person other than the United States," but the action therefor is preserved primarily for the reimbursement of the United States for the compensation awarded and paid by it. Provision made for the disposition of the excess of such damages over the compensation awarded by the United States is merely incidental, and is not to be taken as creating in the injured or killed soldier or sailor a right of action for double compensation against the United States. The general creation and preservation of rights of action by section 10, Federal Control Act, and section 206, Transportation Act of 1920, must yield to the specific provisions covering the injuries of a soldier or sailor on active service in the line of his duty. The rights and remedies of a soldier or sailor in that situation are specially provided for and limited by the provisions of the War Risk Insurance Act.

The demurrers will be overruled, and exceptions may be noted.