10244

CASTLE v. SOUTHERN RY. CO.

(99 S. E. 846.)

RAILROADS—GOVERNMENTAL CONTROL—ACTIONS.—Under Acts Cong. August
29, 1916, and March 21, 1918, and Presidential Proclamation of
December 26, 1917, and March 29 and April 11, 1918 (U. S. Comp.
St. 1918, secs. 1974a, 3115¾a-3115¾p, and section 1974a, note, section
3115¾h, note), relating to the governmental control of railroads dur-
ing war, *held* that General Order No. 50 promulgated by the Director
General, and declaring that actions of injury to persons or property
shall be brought against the Director General and not otherwise, is
valid, and no such action can be maintained against the railroad
company alone.

Before MOORE, J., York, at chambers, January 27, 1919,
and February 25, 1919.   Reversed.

Action by Oliver Castle against the Southern Railway
Company.   From an order refusing to set aside the service
of the summons and complaint, defendant appeals.

*Messrs. McDonald & McDonald,* for appellant, submit:
*The defendant, Southern Railway Company, claims immu-
nity from suit in this action, because of the provisions of the
act of Congress relating to Federal control of railroads, and
General Order No. 50 and 50a of the Director General of
Railroads, which were made by said Director General in
pursuance of power and authority conferred upon him by
the proclamation of the President of the United States, and
especially the proclamation dated 9th March, 1918:* Act of
Congress, entitled "Act making appropriations for the sup-
port of the Army for the fiscal year ending June 30, 1917,
and for other purposes;" 39 Stats. 645; Comp. Stat. 1974a,
sec. 1; Proclamation of the President of 26th December,
1917; Bulletin No. —, pp. 6 and 8; Federal Control Act,
approved March 21, 1918; Bulletin No. 4, pp. 10 and 18,
secs. 8, 9, 10; President's Proclamation, dated 29th March,
1918; General Order No. 50, issued by the Director Gen-

eral of Railroads on October 28, 1918; General Order No. 50a, issued by the Director General of Railroads, 11th January, 1919; 247 Fed. 288; 253 Fed. 676; 254 Fed. 748; 98 U. S. 398; 25 L. Ed. 351; 254 Fed. 748, 235, 231; 39 Sup. Ct. 49; 59 L. Ed. 207; 197 Fed. 144, 146; 116 C. C. A. 568; 42 L. R. A. (N. S.) 1031.  *P. W. Patrick, on whom the summons and complaint was served in this action, was not at the time of such service an officer, agent or employee of the corporation, Southern Railway Company, but, on the contrary, was at such time solely and exclusively the agent and servant of the Director General of Railroads operating the property of Southern Railway Company under Federal Control:* Sec. 12 of Federal Control Act, Bulletin 4, pp. 16 and 17; section 1 of General Order No. 1, Bulletin 4, p. 22, section 3; General Order No. 8, Bulletin 4, p. 37; General Order No. 8, sec. 1; sec. 4, Bulletin 4, p. 38.  *Section 5, General Orders 50 and 50a, provide that service of process in any action against the Director General of Railroads may be served upon the "operating officials" in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company. The Courts will take judicial notice of and give effect to the proclamation of the President and the orders of the Director General of Railroads:* Jones on Evidence, 2d Ed., sec. 122; McKelvey on Evidence, p. 41; Wharton on Evidence, 3d Ed., sec. 338; Wigmore on Evidence, vol. IV, sec. 2577; 246 Fed. 786; 164 N. Y. S. 454; 166 N. Y. S. 567 (Supp.); 80 U. S. 154-56; 20 L. Ed. 614; 137 U. S. 212-215; 34 L. Ed. 695-6; 145 U. S. 546; 36 L. Ed. 812; 152 U. S. 211, 221; 38 L. Ed. 415; 190 U. S. 301, 309; 47 L. Ed. 1071; 202 Fed. 98; 205 Fed. 160, 169.

*Messrs. S. R. Price* and *McDonald & McDonald* (additional argument for appellant), submit: *That the Court was clearly wrong in holding that the Southern Railway Company is legally sued on a cause of action which arose at Lynchburg, Va., September 8, 1918, on a train which was in*

*the possession, use, control and operation of the United States Government:* 58 Law Ed. 1507; 185 U. S. 387; 46 L. Ed. 954, 962; 204 U. S. 331-333; 51 L. Ed. 510; Act of Congress making appropriations, etc., p. 6, of U. S. R. R. Administration Bulletin No. 4; President's Proclamation, 26th December, 1917 (p. 7, Bulletin No. 4), page 8, *Ib.* Federal Control Act, 21st March, 1918, sections 8, 9 and 10 (pp. 14 and 15 of Bulletin No. 4); Proclamation of the President, 29th March, 1918, authorizing the Director General of Railroads to exercise the powers conferred upon the President by the Federal Control Act; General Orders 50 and 50a; 253 Fed. R. 459; 254 Fed. R. 880; 235 U. S. 231, 234; 35 Sup. Ct. 49; 59 L. Ed. 207; 197 Fed. 144, 146; 116 C. C. A. 568; 42 L. R. A. (N. S.) 1031. *The Southern Railway Company is not properly in Court by service on P. W. Patrick, an employee of the United States Government:* Code of Civil Procedure of South Carolina, sec. 184. *The facts are not the same as in the case of Littlejohn v. Railway Company, 45 S. C. 96.*

*Mr. Thos. F. McDow,* for respondent, submits: *There is practically one question involved in this appeal, because if the Court decides that this action lies against the Southern Railway Company, it must necessarily follow that P. W. Patrick, who was admittedly the agent and selling tickets and attending to the freight business at the Southern Railway station, was the proper party upon whom to make the service:* Federal Control Act, sec. 10. *The language of the interpretation given it by Judge Munger, in the case of Rutherford v. Union Pacific Railroad Company, 254 Fed. Reports 880. The war is now ended, so far as we are concerned, and in the case of Moore v. Atchison etc. Railroad. Company, 174 N. Y. S. 60, the action was brought in district other than that permitted by Order 18a:* Law Notes, April, 1919. *There is no longer any necessity for the existence of Order No. 50.*

July 15, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an appeal from an order refusing to set aside the service of the summons and complaint.

The defendant gave notice of a motion to set aside the service of the summons and complaint, on the grounds that the said corporation is not liable to be sued in this action, and that the alleged agent upon whom the service was made is not an agent of the defendant, but was an agent of the United States government, at the time of the alleged service.

His Honor, the Circuit Judge, ruled, that the plaintiff had the right to bring his action, under section 10 of the act entitled "An act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners, and for other purposes," approved the 21st of March, 1918 (chapter XXV, 40 Stat. 456 [U. S. Comp. St. 1918, sec. 3115¾j]) ; and that the President of the United States did not have the power to delegate any of the powers, with reference to actions at law and suits in equity, to the Director General of Railroads.

The complaint alleges that the plaintiff was injured, through the negligence of the defendant, while riding on its line as a passenger, from Washington, D. C., to Salisbury, N. C., near Lynchburg, in the State of Virginia. The appeal assigns error in the said rulings.

On the 29th day of August, 1916, Congress enacted a statute entitled "An Act making appropriations for the support of the Army, for the fiscal year ending June thirtieth, nineteen hundred and seventeen.". Chapter 418, 39 Stat. 619. Section 1 thereof (U. S. Comp. St. 1918, sec. 1974a) is as follows:

"The President, in time of war is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as

may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable. * * *"

This statute not only empowered the President of the United States to take possession and control of the systems of transportation for the transfer of troops and war material, but also for such other purposes, connected with the emergency, as might be necessary in the exercise of his discretion. War was afterwards declared; and the powers thus conferred upon the President fully authorized him to issue his proclamation, on the 26th of December, 1917, which, among other provisions, contains the following:

"It is hereby directed that the possession, control, operation, and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. Said director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the boards of directors, receivers, officers and employees of said systems of transportation. Until and except so far as said director shall from time to time by general or special orders otherwise provide, *the boards of directors, receivers, officers, and employees of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies.*

"Until and except so far as said director shall from time to time otherwise by general or special orders determine, such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission and to all statutes and orders of· regulating commissions of the various States in which said systems or any part thereof may be situated. But any orders, general

or special, hereafter made by said director, shall have paramount authority and be obeyed as such. * * *

"Except with the prior written assent of said director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but *suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said director may, by general or special orders, otherwise determine."* U. S. Comp. St. 1918, sec. 1974a, note.

When Congress passed the act approved the 29th of August, 1916, it knew that, if war was declared, the President would have a tremendous responsibility upon his shoulders and very many delicate duties to perform, which in large measure necessarily would have to be intrusted to other officials. It also knew that it would be necessary to resort to extraordinary methods during the emergency. The President's Proclamation on the 26th of December, 1917, embodied his policy in regard to the control and operation of the systems of transportation, at that time, as shown by the words which we have italicized. But realizing that it might become necessary to change that policy, he expressly ordered that it should only remain of force, "until and except so far as said director shall from time to time otherwise by general or special orders determine."

This was the situation on the 21st of March, 1918, when Congress passed the act hereinbefore mentioned, of which sections 8 and 9 (U. S. Comp. St. 1918, secs. 3115¾h, 3115¾i) are as follows:

"Sec. 8. That the President may execute any of the powers herein and heretofore granted him with relation to Federal control, through such agencies as he may determine. * * *

"Sec. 9. That the provisions of the act entitled 'An act making appropriations for the support of the Army for the

fiscal year ending June thirtieth, nineteen hundred and seventeen, and for other purposes,' approved August twenty-ninth, nineteen hundred and sixteen, shall remain in force and effect except as expressly modified and restricted by this act; and the President, in addition to the powers conferred by this act, shall have and is hereby given such other and further powers necessary or appropriate to give effect to the powers herein and heretofore conferred."

Congress knew, as we have already stated, the manner in which the provisions of the act of 1916 had been construed by the President; therefore the only reasonable inference is that it was the intention, not only to approve the policy which he had temporarily adopted as indicated by his proclamation, but to use such agencies as he might determine and that he should have such additional powers as might be necessary or appropriate to give effect to the powers therein or theretofore conferred.

"Sec. 10. *That carriers while under Federal control shall be subject to all laws and liabilities, as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President.* Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government. Nor shall any such carrier be entitled to have transferred to a Federal Court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because of such Federal control or of any act of Congress or official order or proclamation relating thereto shall, upon motion of either party, be transferred to the Court in which it was

originally instituted.   But no process, mesne or final, shall be levied against any property under such Federal control." U. S. Comp. St. 1918, sec. 3115¾j.

If the words, "actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law," stood alone, it might well be contended that Congress intended to adopt a permanent policy, different from that outlined by the President in his proclamation.   It, however, qualified such right, and made it conform to the policy of the President, by the insertion of the words which we have italicized in that section, and thereby gave it the force and effect only of a temporary expedient until a further order of the President.

"Sec. 16. *That this act is expressly declared to be emergency legislation enacted to meet conditions growing out of war;* and nothing herein is to be construed as expressing or prejudicing the future policy of the Federal government concerning the ownership, control, or regulation of carriers or the methods or basis of the capitalization thereof."   U. S. Comp. St. 1918, sec. 3115¾p.

The words which we have italicized show why Congress intrusted the exercise of so much power to the discretion of the President, and the agencies selected by him.

On the 29th of March, the President issued another proclamation, which, omitting the preamble, provides:

"Now, therefore, I, Woodrow Wilson, President of the United States, under and by virtue of the powers and authority so vested in me by said act and of all other powers me hereto enabling, do hereby authorize the said William G. McAdoo, Director General of Railroads as aforesaid, either personally or through such divisions, agencies, or persons as he may appoint, and in his own name or in the name of such divisions, agencies, or persons, or in the name of the President * * * to make any and all contracts, agreements, or obligations necessary or expedient and to issue any and all orders which may in any way be found necessary and expedi-

ent in connection with the Federal control of systems of transportation, railoads, and inland waterways as fully in all respects as the President is authorized to do, and generally to do and perform all and singular all acts and things and to exercise all and singular the powers and duties which in and by said act, or any other act in relation to the subject hereof, the President is authorized to do and perform." U. S. Comp. St. 1918, sec. 3115¾h, note.

"Except with the prior written assent of said director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but *suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said director may,* by general or special orders, otherwise determine." Proclamation of December 26, 1917 (U. S. Comp. St. 1918, sec. 1974a, note).

On the 11th of April, 1918, the President made another proclamation, which, after the preamble, contains the following provisions:

"It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken, shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. Said director may perform the duties imposed upon him so long and to such extent as he shall determine, through the boards of directors, * * * officers, and employees of said systems of transportation. Until and except so far as said director shall from time to time by general or special order otherwise provide, the boards of directors, * * * officers, and employees of said transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers in the names of their respective companies.

"*Until and except so far as said Director General shall from time to time otherwise by general or special orders*

*determine,* such system of transportation shall remain subject to all existing statutes of the United States and orders of the Interstate Commerce Commission, and to all statutes and orders of regulating commissions of the various States in which said systems or any part thereof may be situated. *But any orders, general or special, hereafter made by said Director General, shall have paramount authority and be obeyed as such."* U. S. Comp. St. 1918, sec. 1974a, note.

These proclamations were issued after the act of March 21, 1918, was approved. The words which we have italicized clearly show that the provision therein, as to actions at law and suits in equity against the carriers, was construed by the President to be temporary in its effect and subject to change by order of the Director General, whenever he deemed it advisable to inaugurate a different policy.

General Order No. 8, sec. 5, provides that "The government now being in control of the railroads, the officers and employees of the various companies no longer serve a private interest. All now serve the government and the public interest only."

General Order No. 50 made on the 28th of October, 1918, by William G. McAdoo as Director General, is as follows:

"Whereas, by the proclamations dated December 26, 1917, and April 11, 1918, the President took possession and assumed control of systems of transportation and the appurtenances thereof and appointed the undersigned, William G. McAdoo, Director General of Railroads, and provided in and by said proclamations that 'until· and except so far as said director shall from time to time otherwise by general or special orders determine, such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission and to all statutes * * * but any orders, general or special, hereafter made by said director shall have paramount authority and be obeyed as such;' and,

"Whereas, the act of Congress, called the Federal Control Act, approved March 21, 1918 [section 10 (U. S. Comp. St.

1918, sec. 3115¾j)], provided that 'carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President;' and,

"Whereas, since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits and proceedings hereinafter referred to, based on causes of action arising during or out of Federal control should be brought directly against the said Director General of Railroads and not against said corporations:

"It is, therefore, ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any Court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against the Director General of Railroads, and not otherwise: *Provided, however,* That this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures.

"Subject to the provisions of General Orders numbered 18, 18a and 26 heretofore issued by the Director General of Railroads, service of process in any such action, suit or proceeding may be made upon operating officials operating for the Director General of Railroads, the railroad or other

27—112

carrier in respect of which the cause of action arises in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company.

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action, arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom.

"The undersigned Director General of Railroads is acting herein by authority of the President for and on behalf of the United States of America, therefore no supersedeas bond or other security shall be required of the Director General of Railroads in any Court for the taking of or in connection with an appeal, writ of error, supersedeas, or other process in law, equity, or in admiralty, as a condition precedent to the prosecution of any appeal, writ of error, supersedeas, or other process, or otherwise in respect of any such cause of action or proceedings."

General Order No. 50a which is in all material respects similar to General Order No. 50 was issued on the 11th of January, 1919, by Walker D. Hines, Director General.

Our conclusion that William G. McAdoo, Director General, and Walker D. Hines, Director General, were vested with full power to make General Orders No. 50 and No. 50a is sustained by the recent decision rendered by the United States Supreme Court, in the case of *Northern Pac. Ry. Co. et al., Plaintiffs in Error, v. State of North Dakota, on the Relation of William Langer, Attorney General.* 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. —.

Reversed.

Messrs. Justices Hydrick and Fraser concur.

Messrs. Justices Watts and Gage dissent.