## AMICON FRUIT CO. v. NORFOLK & W. RY. CO.

### SAME v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Fourth Circuit. May 6, 1924.)

#### Nos. 2144, 2145.

Appeal and error ⬤1215—Giving of instructions in conflict with the law of the case as settled by appellate court held error.

In an action to recover damages caused by the maintenance by defendant of a nuisance on its property, the Circuit Court of Appeals held, on the issue presented, that plaintiff was under no duty to minimize damages caused by defendant's wrongful act, by expending money to protect its property. In a second action between the same parties to recover damages caused by a continuance of the nuisance, the giving of instructions which in effect permitted the jury to deny recovery because plaintiff failed to make such expenditure for protection of its property, thereby "forcibly renting" it to defendant, *held* error.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

· Actions at law by the Amicon Fruit Company against the Norfolk & Western Railway Company, and against James C. Davis, Director General of Railroads, as agent, etc. Judgments for defendants, and plaintiff brings error. Reversed.

D. E. French, of Bluefield, W. Va. (French, Easley & Easley, of Bluefield, W. Va., on the brief), for plaintiff in error.

A. W. Reynolds, of Princeton, W. Va. (F. M. Rivinus, of Philadelphia, Pa., and Bernard McClaugherty, of Bluefield, W. Va., on the brief), for defendants in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. The plaintiffs in error were plaintiffs in the lower court, and the defendants in error the defendants, and will be referred to as plaintiffs and defendants.

The two actions were in trespass on the case, to recover damages alleged to have been caused by water leaking from a water pipe of the railroad, running into plaintiffs' property. The suit against the railroad company was for damages for periods from February 13, 1917, to December 31, 1917, and from March 1, 1920, to February 27, 1922, and against the Director General of Railroads for during the period of governmental control, viz. from January 1, 1918, to February 28, 1920. The cases, by agreement of parties, were tried together on the same evidence before the same jury, separate verdicts being entered in each case, and likewise by agreement of parties, and order of court, they were consolidated and presented to this court on the same record. The facts in the cases are briefly these:

Plaintiffs had for a number of years been engaged in the wholesale fruit and produce business in Bluefield, W. Va. In the fall of the year 1909, it constructed the building in which it is now doing business, upon property adjoining the right of way of the defendant railway, and moved into the building in January, 1910, although it had for a number of years prior to that time conducted business in a frame building on the same lot, which was burned down in 1909. The new building was constructed of brick and concrete, with storage rooms in the basement specially prepared for taking care of fruit and vegetables, and preserving perishable products. The basement was constructed of concrete and iron, with concrete floors, and specially provided dry rooms, to preserve an even temperature of 60 degrees.

The railway company in the year 1909 built a 16-inch water pipe line from Graham, Va., to Bluefield, W. Va., a distance of some three miles, with a view of supplying its engines, shops, etc., at Bluefield, with water. The water was pumped through this pipe line at high pressure; Graham being some 300 feet lower than Bluefield. Shortly after plaintiffs moved into their new building in 1910, this pipe line burst, flooding their building with water, cutting a channel under the ground, and flowing against and through the building, which was still green, and flooded the basement. The railway company took up the pipe and repaired the same, but the pipe line continued to leak, causing damage to the plaintiffs' property, until it was finally removed after the institution of this suit in April, 1922.

Subsequent to the first breaking and leaking of the pipe line as aforesaid, plaintiffs instituted suit against the railway company to recover damages caused to its property thereby, for the five-year period to January 13, 1917. In that, the first suit, the plaintiff recovered against the railway company a verdict for $7,000. The case was brought to this court and affirmed (Norfolk & Western Railway Co. v. Amicon Fruit Co., 269 Fed. 559, 14 A. L. R. 547), and that judgment has been fully paid.

The present suits are to recover for continuing damages for the 5-year period prior to their institution in 1922, to wit, from February, 1917, to February, 1922. The railway company and the Director General each regularly appeared, issue was joined between the parties upon appropriate pleadings, and the cases were submitted to a jury on the merits, resulting in verdicts in favor of the defendants in each case. These verdicts the plaintiffs moved to set aside, but the motions were overruled, and judgment entered for the defendants. From the action thus taken, the writs of error in these cases were sued out.

Sight must not be lost of the character of the suits; that is, just what they involve. The first suit between the parties (269 Fed. 559, 14 A. L. R. 547, supra), was to recover for damages alleged to have been sustained by the plaintiffs arising from the improper use by the railway company of its property; that is to say, that it allowed it to be and remain in such condition as to injuriously affect plaintiffs' adjoining property, so that the same could not be used for the purposes for which it was intended. This, in effect, charged defendants with maintaining a nuisance in the use of their property. That case was decided in favor of the plaintiffs, and the judgment of this court determines the rights of the parties as applicable to the property in the circumstances, and for the causes mentioned. In that suit thus settling the law, the defense was especially stressed that the plaintiffs could have avoided the losses sued for by the expenditure of a small amount for the protection of their own property. The ruling of the court on this question was made the subject of much consideration in the case on appeal. The decision of this court was adverse to those making the claim. Judge Knapp, speaking for the court, said:

"It is further contended that the judgment should not stand because plaintiff, at a cost of some $250, could have constructed a drain from its basement to a public sewer in an adjacent street, and thereby avoided in the main the injury of which complaint is made. We are not prepared to hold that plaintiff was bound to take this means, or any similar means, of protecting its property. The rule of minimizing damages, when one is suffering from the wrongful acts of another, does not to us seem applicable to the situation here disclosed, which rather is like that dealt with in Pixley v. Clark, 35 N. Y. 520, 91 Am. Dec. 72, where the court says: 'The defendants also insist that the injury might be remedied by the plaintiff at small cost by digging a drain along the embankment. If this were true, he is not bound to do it. As the defendants caused the damage without authority, and for their own benefit, they should find the remedy at their own expense.'"

The present suits are to recover damages for a continuance of the conditions originally complained of, limited to the period of five years prior to the institution of the suits, the statutory limitation. In other words, they are for a continuing nuisance. The assignments of error

relate especially to the giving of two certain instructions, which will be fully considered, as it is claimed that the verdicts of the jury in each case resulted therefrom. These instructions are parts of the general charge of the court; the portions particularly excepted to being as follows:

I. "The question of the good faith of this plaintiff, in simply, you might say forcibly, renting this room to the defendant, for the period of five years, is only to be taken into consideration, as I see it, under the instruction of the court, in so far as it applies to the credibility of the plaintiffs' witnesses, especially the manager, on the question of testimony. The courts above me have held that there is no duty on this plaintiff to minimize these damages, and of course I am bound to tell you that that is the law. I cannot help but draw the conclusion, however—at least I cannot help, but there is a question of testimony for you to decide—whether you can help from drawing the conclusion that this cellar, 12 feet deep, of which at least 7 feet in all was below the surface of the ground, at the end farthest from the railroad track, and with a sewer running down that valley, what credibility you are to give to the evidence of a man, or of a company, or the witnesses of the company, and the manager of those in charge, who would not in a neighborly fashion at least, do what was necessary to protect himself from this loss, and whether or not he is trying to increase the loss, or whether his evidence is to be taken into consideration therewith, as trying to increase the loss, and whether it was fair, and just and true, in connection with their testimony surrounding it."

II. "The Court: That is a question for you gentlemen to decide, whether it was practicable, or feasible, to join or connect with that sewer down that valley, or some other way, and you are to take into consideration that sort of conduct, based on the knowledge you have, and the common sense you have. There was evidence in this case that there was a sewer south of this building, as I recollect it, and that is a question for you to decide, and not me, and you can decide that question as to whether it could have been connected up with that, recollecting, as the evidence stated, that this sewer was lower than this building, and that the interest of this plaintiff was to be taken into consideration alone, in arriving at the question of credibility of the witnesses, and whether a witness—whether the people in interest, as I said, stood by and as I further said, forcibly rented their room for this long period of time, that is all a question for you to consider and decide, and the question of the credibility of the witnesses does not affect the question of damages. As I stated before, the Circuit Court of Appeals has settled to the contrary the question of minimized damages, and I have so instructed you."

A careful consideration of the portion of the charge complained of, set forth in the two above assignments of error, convinces us that the learned judge failed in what he said to conform to the decision of this court as contained in the extract above quoted from Judge Knapp's opinion. What this court held, as bearing upon the question of the obligation of the plaintiffs to make expenditures on account of their own property, and the duty of the defendant railway to maintain its own, and what was in substance said and ruled by the charge of the lower court, simply cannot be reconciled consistently with the idea that the jury understood they were to carry out and be governed by this court's decision. The fact that the learned judge, in giving the reason for his conclusion, questioned the good faith, honesty, and neighborly conduct of the plaintiffs, in the circumstances claimed, and the credibility of the plaintiffs' witnesses in maintaining the same, can and in no manner should deprive the plaintiffs of asserting and being accorded their rights under the law as determined by this court. Moreover, we can but feel

that the court's statement tended to prejudice the plaintiffs' cases in the minds of the jury, and to reflect upon the integrity of their witnesses in a manner not warranted by the testimony.

The decisions of the District Court should be reversed, and new trials awarded, at the cost of the defendants in error, for the reasons herein stated.

Reversed.

