## BAGGOTT v. SOUTHERN RY. CO.

(District Court, E. D. South Carolina. July 10, 1924.)

**1. Railroads ⊂⇒5½, New, vol. 6A Key-No. Series—Company not suable for injury caused during federal operation.**

Suits for injuries to the person or damage to property by railroads while under federal control, if instituted during such control, were required to be brought against the Director General, and if since such control ceased must be brought against the federal agent, and in neither case can such suit be maintained against the railroad company.

**2. Railroads ⊂⇒5½, New, vol. 6A Key-No. Series—Statutes relieve corporations from all liability for injuries occurring during federal operation.**

The requirement of Director General's order No. 50 that suits "growing out of the possession, use, control or operation" of any railroad by the government should be brought against the Director General, and that of Transportation Act 1920, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼cc) that suits based on causes of action "arising out of the possession, use or operation" by the president of the railroad of any carrier shall be brought against the federal agent, are essentially the same; the intention of both being to relieve railroad corporations from all liability for injuries occurring through the instrumentalities of such corporations while used or operated by the government.

**3. Railroads ⊂⇒5½, New, vol. 6A Key-No. Series—Company held not subject to suit for flooding of land during federal control.**

An action for injury to property caused by a railroad trestle so negligently constructed and maintained as to constitute a nuisance, and which caused the flooding of plaintiff's land while the railroad was in possession of and being used and operated by the government, *held* not maintainable against the railroad company though the trestle was constructed by it before the period of federal control.

**4. Railroads ⊂⇒5½, New, vol. 6A Key-No. Series—Company not liable for continued maintenance of nuisance after federal control.**

Decisions holding that the creator of a nuisance cannot relieve himself from liability for its continued maintenance by a voluntary conveyance or lease of the property are not applicable to railroad corporations whose property was taken from their possession and control by the government without their consent.

At Law. Action by Wilkes J. Baggott against the Southern Railway Company. On demurrer to complaint. Demurrer sustained.

C. E. Sawyer and Herbert Gyles, both of Aiken, S. C., for plaintiff.
P. F. Henderson, of Aiken, S. C., for defendant.

ERNEST F. COCHRAN, District Judge. This action was instituted in August, 1923, after federal control of railroads had ceased. The complaint alleges in substance that the defendant in 1907, prior to federal control, negligently, willfully, and wantonly constructed a trestle across the North Edisto river in such manner that there was not sufficient space for the water of the river to pass through freely when the river rose, and that the defendant knew that by reason of the changing conditions of the terrain the water was liable to rise more rapidly and to a greater height year by year, and that the defendant with full knowledge of this condition maintained the trestle in the negligent manner described, and that during the month of August, 1918, the river rose to a great height, and by reason of this faulty

construction and maintenance of the trestle plaintiff's land was overflowed and his crops damaged.

The defendant has demurred to the complaint on two grounds. The first ground of demurrer is that the cause of action arose during federal control, and no action would lie against the railroad corporation, but the suit should be brought against the Director General or the federal agent appointed by the President. The second ground of demurrer is that, if the complaint be construed to state a cause of action accruing in 1907, when the trestle was constructed, it affirmatively appears that more than six years (exclusive of the period of federal control) had elapsed before the suit was commenced, and that the cause of action is barred under the statute of limitations of. South Carolina. At the hearing of the demurrer it was conceded by counsel on both sides that the cause of action did not arise in 1907, but arose at the time the damage occurred, in 1918, which was during federal control. The second ground of demurrer, therefore, need not be considered.

[1] The law is now settled that suits for injuries to the person or damages to property by railroads while under federal control cannot be brought against the railroad corporation owning the railroad, but must be brought against the Director General, if the suit is instituted during federal control. The whole subject, including the various acts of Congress, orders of the President, and orders of the Director General, has been so fully considered and disposed of by recent decisions of the Supreme Court of South Carolina and the Supreme Court of the United States that it is only necessary to refer to them. N. C. R. R. Co. v. Lee, 260 U. S. 16, 43 Sup. Ct. 2, 67 L. Ed. 104; Missouri Pacific v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087; Castle v. Southern Ry., 112 S. C. 407, 99 S. E. 846, 8 A. L. R. 959.

If the cause of action arose out of federal possession, use, or operation, and the suit is instituted after the termination of federal control, then under Transportation Act Feb. 28, 1920 (Comp. St. Ann. Supp. 1923, § 10071¼ et seq.), the suit may be brought against an agent designated by the President for that purpose, and the judgment, if recovered, cannot be collected by execution against the property of the railroad, but must be paid out of the revolving fund created by section 210 of that act. Act Feb. 28, 1920, c. 91, § 206, 41 Stat. 461, amended by Act Feb. 24, 1922, c. 70, §§ 1 and 2, 42 Stat. 393, 394 (Comp. St. Ann. Supp. 1923, § 10071¼cc).

While the Transportation Act provides that the suit *may* be brought against the agent designated by the President, nevertheless, in view of the various acts and orders relating to federal control and the decisions of the courts construing them, a suit on a cause of action arising out of federal control, but commenced after the termination of federal control, cannot be instituted against the railroad corporation, but must be instituted against the agent named by the President. Currie v. L. & N. R. R. Co., 206 Ala. 402, 90 South. 313, 19 A. L. R. 675.

[2, 3] The plaintiff, however, contends that the cases cited were cases of wage controversies and personal injuries, and that the pres-

ent case falls into a different category. Plaintiff's theory of the case is that his suit would not lie against the Director General, if it had been brought before federal control terminated, because it is not embraced in General Order of the Director General No. 50, because, as he alleges, the claim does not grow out of the "possession, use, control or operation" of the railroad by the Director General, and that the suit could not be brought after federal control ended against the agent appointed by the President, because it is not based on a cause of action arising out of the "possession, use or operation" of the railroad by the government. He argues that he cannot sue the agencies of the government, because the case is not embraced in any of the acts and orders referred to, and that his suit would lie against the defendant, because the defendant, by its original construction of the trestle in an improper manner and continuing it in that condition until federal control, is to be deemed to have maintained it up to the time the flooding of the land and consequent damage occurred, and the defendant would therefore be liable as for a continuing nuisance maintained by it.

Order No. 50 of the Director General is as follows:

"It is therefore ordered that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the *possession, use, control or operation* of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, *and not otherwise:* Provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures."

The pertinent sections of the Transportation Act of 1920 are as follows:

"(a) Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier. * * *

"(e) Final judgments, decrees, and awards in actions, suits, proceedings, or reparation claims, of the character above described, rendered against the agent designated by the President under subdivision (a), shall be promptly paid out of the revolving fund created by section 210. * * *

"(g) No execution or process, other than on a judgment recovered by the United States against a carrier, shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under federal control." Comp. St. Ann. Supp. 1923, § 10071¼cc.

While there are differences in the phraseology of Order No. 50 and the section of the Transportation Act quoted, so far as this controversy is concerned, I do not think such differences material. The suits provided for in Order No. 50 are for "claims," etc., "*arising* since December 31, 1917, and *growing* out of the *possession, use, control or operation*" of the railroads. Section 206, subd. (a), of the Transportation Act provides for suits "based on causes of action *arising out of the possession, use or operation*" of the railroads, and in subdivision (g) of the same section the provision is that no execution shall be levied "where the cause of action on account of which the judgment was obtained *grew out of the possession, use, control or operation*" of the railroad. The failure to use the word "control" in subdivision (a), § 206, does not indicate any intention to differentiate that section in that respect from General Order No. 50 or other parts of the Transportation Act, especially in view of the fact that the act itself repeatedly uses the words "federal control," and in section 2 defines the term "federal control" as meaning the "possession, use, *control*, and operation" of railroads by the President.

The plaintiff argues that the Director General had no part in the original construction of the alleged nuisance and no part in its continuance, and that therefore the cause of action could not in any sense be said to "grow out" of the "possession, use, control or operation" of the railroad as required by Order No. 50, nor "arise out" of the "possession, use or operation" in the language of section 206, subd. (a), of the Transportation Act. He contends that neither the order nor the Transportation Act provides for suits on causes of action arising "during" federal control, but words of more limited meaning are used. It is true the word "during" is not used, and it may be conceded that the words actually employed are of more limited meaning, but it by no means follows that the words employed in the order and act are not broad enough to cover the present case. I think the plaintiff's construction of the order and the act in question is too narrow. It ignores the reasons for the order and act and the circumstances and nature of the government's possession.

By the action of the government the physical properties and instrumentalities of the railroad corporation were taken wholly from the corporation, and all control of the corporation over these properties and instrumentalities was completely suspended. Missouri Pacific v. Ault, supra. It is too plain for argument that to deprive one by operation of law of all control over his property and instrumentalities and then hold such person responsible for what occurred thereafter by reason of the use of those instrumentalities by the government would be contrary to the first principles of justice. It was the intention of the acts of Congress and orders referred to to relieve the railroad corporations from all liability for any injuries that might occur *through the instrumentalities of the railroad corporations* while used or operated by the government and to cast such responsibility upon the government. There can be no question that the plaintiff was injured through one of the instrumentalities of the railroad, viz. a trestle so negligently constructed and maintained as to amount in law to a

nuisance, at a time when this instrumentality was possessed, used, and operated by the Director General. I am not prepared to concede that the trestle was not being "operated" by the Director General, when it was used every day for the passage of trains; but, even if such concession were made, nevertheless the trestle was in the "possession" of the Director General and "used" by him, and the trestle was the cause of the injury. The trestle was also undoubtedly under the "control" of the Director General, and his control carried with it the right and power to remedy any defects in its construction. The Supreme Court of the United States said in Missouri Pacific v. Ault, supra:

"The systems are regarded much as ships are regarded in admiralty. They are dealt with as active, responsible parties, answerable for their own wrongs."

And in the same case the court holds that the owners of the railroads are absolved from liability and the legal person in control is responsible. If the plaintiff's construction of the order and act of Congress in question should be adopted, it would lead to the result that parties injured as plaintiff claims he has been injured would have no redress against the government or its agents, and the responsibility would be thrown back upon the owners, although the injury occurred at a time when their property had been taken away from them and they had been deprived of all power to prevent the injury. A construction leading to such inequitable and unjust results should not be adopted, if it can be reasonably avoided. To say that the order and act do not make provision for the liability of the government to be tested in such a case by a suit against the agents of the government would in my opinion be a construction so narrow as to be unreasonable and not warranted by the language employed.

The various orders and acts of Congress do not undertake to create any new cause of action against the government or its agents, but were intended to provide against any claim of immunity on the part of the government, by directing that suits might be brought against the Director General or the agent appointed by the President for all claims which might have been maintained against the railroad if federal control had not intervened and which arose through the possession or use of the property and instrumentalities of the railroad by the government. The question therefore before the court is not whether a cause of action exists in this case against the government or its agents or not. The government or its agents may or may not be liable for the acts complained of. But provision has been made, as I view it, to test that liability, either by a suit against the Director General, if it had been brought before federal control terminated, or against the agent designated by the President, if brought after that period.

That suits for damages for maintaining a continuing nuisance by the Director General where damages occurred during federal control should be brought against the Director General, although the Director General did not create the nuisance, appears to be recognized as proper in the cases of Amicon Fruit Co. v. Norfolk & Western R. R. Co., No. 2144, and Amicon Fruit Co. v. Davis, Director General, No. 2145, in the Circuit Court of Appeals for this Circuit, 299 Fed. 120. In

those cases the nuisance was created by the railroad prior to federal control, but was allowed to continue by the Director General, and suit was brought against the railroad company for damages which accrued before and after federal control and against the Director General for damages accruing during federal control. The question of the propriety of the suit against the Director General was not expressly raised, but the inference is unavoidable that the court and all the parties considered such action proper.

The plaintiff argues that the government's agents could not be sued because, when the government took over the railroad property in this case, the defects complained of were latent and could not have been known to the Director General. The complaint does not specifically state that the defects in the construction of the trestle were latent, but, assuming such to be the fact, I do not think that such fact would change the situation. If the railroad corporation was under a duty to maintain these instrumentalities in such a safe and proper manner that they could not injure the property of others, the Director General, when he took charge of the railroad, was equally under that duty. If the property of a person should be injured through the instrumentalities of the railroad corporation by reason of latent defects in those instrumentalities, and the railroad corporation would be liable, the government's agents should be liable just the same as the corporation would have been if federal control had not intervened. The railroad company after federal control had no power of inspection, no power to discover any latent defects, and no power to remedy such defects if they should be discovered. After government control, the government's agents alone had the power to maintain the properties and instrumentalities of the railroad corporation in a safe condition. The object of the orders and acts of Congress in question was to relieve railroad corporations entirely from these duties and from any suits arising from neglect of such duties.

[4] But, even if the orders and acts of Congress in question should be construed as narrowly as contended for by the plaintiff, and no suit could be brought by him for the acts set forth in the complaint against any of the agents of the government, nevertheless I do not think the suit will lie against the defendant. Plaintiff's suit, as against the defendant, is based on the theory that the defendant maintained the original nuisance created by it, and under the principles of law governing a continuing nuisance should be held liable. His theory is that the fact of the transfer of possession does not relieve the railroad corporation from the duty of removing the nuisance which had been created by it. There are cases which hold that the creator of a nuisance does not by conveying his property to a third person release himself from liability for the continuation of the nuisance, and this is especially true where the creator of the nuisance conveys his property by a warranty deed. Note, 25 L. R. A. (N. S.) 732; 20 R. C. L. 392; 29 Cyc. 1204. There are also cases which hold that the creator of a nuisance who leases the same to another cannot thereby escape liability. 16 R. C. L. 1076, 1098; 20 R. C. L. 394; 29 Cyc. 1204. It has also been held that the grantee is not liable for the continuance of a nuisance created by his grantor, unless the grantee increased the ob-

struction or in some affirmative way continued the nuisance, or unless there was notice to the grantee and demand upon him for its removal. 20 R. C. L. 392 et seq.; Lawton v. Railway, 75 S. C. 82, 55 S. E. 128; De Laney v. Railway, 58 S. C. 358, 36 S. E. 699, 79 Am. St. Rep. 843; Leitzsey v. Water Power Co., 47 S. C. 476, 25 S. E. 744, 34 L. R. A. 215; Elliott v. Rhett, 5 Rich. L. (S. C.) 420, 57 Am. Dec. 750.

But none of these authorities help the case of the plaintiff. In all of these cases the creator of the nuisance voluntarily parted with his possession and by his own act placed it out of his power to remove the nuisance. The cases which hold the creator of the nuisance liable, although he has granted the land to another, proceed not only upon the theory that he has voluntarily parted with his possession, but that his act of conveyance amounts to an affirmance of the nuisance, and therefore the continuance and maintenance of it, and in many of the cases stress is laid upon the fact that the deed contained covenants or warranties for quiet enjoyment, which necessarily affirm the right to continue the nuisance, and that by transferring the premises with the original wrong still existing he is to be treated as affirming the continuance of it.

In the case at bar, however, there is nothing whatever in the relation between the railroad corporation and the government's agents which could possibly be construed as an affirmance on the part of the railroad corporation of the continuance of the nuisance. The property of the defendant was taken away from it by a power it could not withstand, the power of the federal government exercising a right in the nature of a right of eminent domain. N. C. R. R. v. Lee, supra. It has been expressly held by the Supreme Court of the United States in N. C. R. R. v. Lee, supra, that the relation between the railroad company and the government and its agent is not that of lessor and lessee, and therefore the cases which hold the landlord liable for nuisances created by him, although he has let the premises to another, have no application whatever. Nor do the cases cited relative to the liability of a grantee have any application here, for whether the government's agents could be absolved from liability for the acts complained of because of the fact that it does not appear that the government or its agents increased the nuisance, or that any notice or demand was made upon the Director General for its removal, is a question not now before the court, and that question would have to be tested in a suit brought against the government's agents as provided by the orders and acts of Congress referred to.

The cases which hold the creator of a nuisance liable for its continuance on the theory that he continues to maintain it, although he has parted with the possession, are in reality exceptions to the general rule; the general rule being that no one is to be held liable for a nuisance which he cannot himself physically abate without legal action against another for that purpose. 20 R. C. L. 391. It is clear that in the case at bar the defendant lost all control over its property through no fault or act of its own. It has been deprived of all power to remedy any conditions in its instrumentalities by the action of the government. For aught that appears the defendant may have been upon the eve of

correcting the situation which is complained of when the property was taken from it. At any rate it was deprived of the right to do so.

When the government took charge of the railroads by the orders and acts of Congress referred to, it waived its immunity from suit for all claims or causes of action arising or growing out of the possession, use, control, or operation of the railroad property and instrumentalities. But even if it had not done so, and had taken over the property without any provision for a suit against the government at all, nevertheless the railroad corporation could not be held liable for anything that occurred arising from the use of its property by the government, nor could it be held liable for any failure on its part to inspect such property or to remedy such defects therein, when the government had by its action in the exercise of its undoubted right created a situation where it was absolutely impossible for the railroad corporation to remedy any such defect, and the railroad corporation could not consistently with any sound principles of jurisprudence be deemed under any duty to remedy the defects complained of.

The plaintiff has not suggested any grounds of liability of the defendant save those of the ordinary principles of the common law, but the Supreme Court of the United States in Missouri Pacific v. Ault, supra, held that no liability arising out of the operation of these systems was imposed by the common law upon the owner companies, as their interest in and control over the systems were completely suspended, and that section 10 of the Federal Control Act, which continued the liability of "carriers while under federal control," should not be construed as subjecting the companies to liability for acts or omissions of the Railroad Administration, since the companies are deprived of all power over the properties and the personnel. My view of the law is that, where property is taken by the government under the power of eminent domain or by virtue of a power in the nature of eminent domain, and the owner is thereby excluded from all control over his property, he cannot be held liable under the common law for damages caused thereafter by a nuisance negligently created by him before such property was taken from him, nor is there any act of Congress or other law imposing liability in such a case.

I am of opinion, therefore, that the complaint does not state a cause of action against the defendant, the railroad company, and judgment sustaining the demurrer will be entered accordingly.