19153. WYNN *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

Decided March 6, 1929. Rehearing denied April 9, 1929.

*R. B. Blackburn, Hewlett & Dennis,* for plaintiff.
*McDaniel & Neely, W. O. Wilson,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts). This is a suit which grew out of an injury claimed to have been sustained by the plaintiff in Mobile, Alabama, on May 14, 1919. The allegations of her petition and the answer of the defendant as amended are substantially set out in the foregoing statement of facts. It is not denied that the injury occurred during Federal control. The authority of the United States government to take over the said telephone system and the said building as a part thereof will be found in the resolution of Congress approved July 16, 1918, 40 Stat. p. 904, chap. 154 (47 U. S. C. A. § 63), and the proclamation of the President of the United States, dated July 22, 1918, 40 Stat. No. 2, p. 1807. The evidence in this case shows that the building in which the injury is alleged to have occurred was at that time used exclusively for telephone purposes, and that it was in the exclusive control and possession of the United States government, under the authority of the acts of Congress and the proclamation of the President of the United States to which reference is made above. In Baggott v. Southern Railway Co., 300 Fed. 338, it was held: "The law is now settled that suits for injuries to the person or damage to property by railroads while under Federal control can not be brought against the railroad corporation owning the railroad, but must be brought against the director-general, if the suit is instituted during Federal control." In Western Union Telegraph Co. v. Poston, 256 U. S. 662, 664 (41 Sup. Ct. 598, 65 L. ed. 1157), Mr. Justice Brandeis, who delivered the opinion, said: "In conferring upon the President power 'to take possession and assume control' of the telegraph systems the resolution adopted language identical with that which had been employed in the act of August 29, 1916, c. 418, 39 Stat. 619, 645, pursuant to which the railroads were brought under Federal control. See Missouri Pacific R. R. Co. v. Ault, ante, 554. We held there that the supplementary legislation known as the Federal control act did not impose liability upon the company, and that, since the government was operating the property, the railroad company could not be held liable under the established principles of the common-law governing liability. These principles are equally applicable here." In the opinion in that case it was further held (p. 666) that while "the companies were not made the operating agents of the United States, the officers of the companies were to operate the properties for the

United States and it was to be done 'in the names of their respective companies.'" It thus appears that the rulings of the courts relating to suits for damages against railroads during governmental control, are applicable to such suits involving telephone companies during the same period. This whole subject has been so fully considered, and disposed of by the decisions of the courts, that it is necessary to refer only to some of them. See N. C. Railroad Co. v. Lee, 260 U. S. 16 (43 Sup. Ct. 2, 67 L. ed. 104) ; Mo. Pacific R. Co. v. Ault, 256 U. S. 554 (41 Sup. Ct. 593, 65 L. ed. 1087) ; Northern Pacific R. Co. v. North Dakota, 250 U. S. 135, 148 (39 Sup. Ct. 502, 63 L. ed. 897) ; Dakota Central Telephone Co. v. South Dakota, 250 U. S. 163 (39 Sup. Ct. 507, 63 L. ed. 910, 4 A. L. R. 1623) ; Va. Ry. Co. v. Mullens, 271 U. S. 220 (46 Sup. Ct. 526, 70 L. ed. 915) ; Lane v. So. Ry. Co., 182 N. C. 774 (109 S. E. 87) ; Castle v. So. Ry. Co., 112 S. C. 407 (99 S. E. 846, 8 A. L. R. 959). However, counsel for the plaintiff in error insist in their brief that "the control of the government was not so exclusive as to prevent the telephone company from correcting any existing defects," and that "the defect in the steps was one of original construction." Both of these arguments are answered by those decisions of the Supreme Court which hold that "no divided but a complete possession and control were given the United States for all purposes as to the railroads in question." See Northern Pacific Railway Co. v. North Dakota, supra. In Va. Ry. Co. v. Mullens, supra, after quoting Northern Pacific Ry. Co. v. North Dakota, supra, Mo. Pacific R. Co. v. Ault, supra, Wabash Railway Co. v. Elliott, 261 U. S. 457, 462 (43 Sup. Ct. 406, 67 L. ed. 743), N. C. Railroad Co. v. Lee, supra, and Dupont de Nemours & Co. v. Davis, 264 U. S. 456, 462 (44 Sup. Ct. 364, 68 L. ed. 788), Mr. Justice Van Devanter said : "In principle these decisions are determinative of the question here presented. They show that Federal control did not rest on a conventional arrangement with the owner-companies, but on an exertion of supreme governmental power, and that the legislation, proclamation and order before recited contemplated a complete separation of the companies from the roads while under such control, and an absence of responsibility by the companies for losses and injuries resulting from the use, operation and maintenance of the roads during that period. When the United States took over this road the embankment and

track in the bed of the stream were taken over as part of it; and the defendant was deprived of all power over them while they remained under Federal control. Their maintenance and use during that period were exclusively in the hands of Federal agents. If a duty rested on any one to make any change in them it rested on the Federal agents; and if maintaining and using them without change was a wrong against the plaintiff it was a wrong committed by those agents, for which no liability attached to the defendant. The plaintiff relies on cases holding the creator of a nuisance liable for injuries resulting therefrom after he had transferred the premises to another by deed or lease; but they are not in point. They proceed on the theory that by such a transfer the creator expressly or impliedly affirms the right of the transferee to continue the prior situation or use, and also voluntarily disables himself from correcting or abating the same. . . The United States, as we have seen, came into possession, not as a conventional transferee, but by an exercise of governmental power in which the defendant had no voice." In Baggott v. Southern Ry. Co., supra, it was held that "suits for injuries to the person or damage to property by railroads while under Federal control, if instituted during such control, were required to be brought against the director-general, and if since such control ceased must be brought against the Federal agent, and in neither case can such suit be maintained against the railroad company." And in that case Judge Cochran said: "When the government took charge of the railroads by the orders and acts of Congress referred to, it waived its immunity from suit for all claims or causes of action arising or growing out of the possession, use, control or operation of the railroad property and instrumentalities." Applying the ruling in the foregoing cases to the facts of this case, it is clear that the trial judge did not err either in overruling the demurrer to the amendment to the answer or in directing a verdict for the defendant.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*